**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KENNETH LAYNE MORRILL;
MORRILL & ARONSON, P.L.C., an
Arizona professional limited liability
company,
            *Plaintiffs-Appellants*,

v.

SCOTT FINANCIAL CORPORATION, a
North Dakota corporation; BRADLEY
J. SCOTT, an individual; KEMP,
JONES & COULTHARD, LLP, a
Nevada limited liability partnership;
HARRISON, KEMP & JONES
CHARTERED, a Nevada professional
corporation; J. RANDALL JONES,
            *Defendants-Appellees.*

No. 14-16922

D.C. No.
2:14-cv-00922-
HRH

OPINION

Appeal from the United States District Court
for the District of Arizona
H. Russell Holland, Senior District Judge, Presiding

Argued and Submitted October 19, 2016
San Francisco, California

Filed October 23, 2017

Before: Andrew J. Kleinfeld and Milan D. Smith, Jr.,
Circuit Judges, and John A. Kronstadt,* District Judge.

Opinion by Judge Kronstadt;
Dissent by Judge Kleinfeld

**SUMMARY**\*\*

**Personal Jurisdiction**

The panel affirmed the district court's dismissal due to lack of personal jurisdiction over any defendant of an action brought by an attorney and his law firm, alleging claims for abuse of process and wrongful institution of civil proceedings.

The plaintiffs resided, or were located, in Arizona, and they brought claims in the District of Arizona. The defendants were a North Dakota corporation and its sole shareholder and officer, and a Nevada attorney and law firms.

The panel applied the three-part test for specific personal jurisdiction. Under the first prong, the panel applied the purposeful direction test because the nature of the underlying claims arose from alleged tortious conduct. The panel held that defendants' actions were not purposefully directed at

---

\* The Honorable John A. Kronstadt, United States District Judge for the Central District of California, sitting by Designation.

\*\* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Arizona. The panel further held that to establish personal jurisdiction over defendants in this action, plaintiffs were required to make a prima facie showing that defendants' alleged actions were directed at Arizona, not just at individuals who resided there, and plaintiffs failed to do so.

The panel rejected plaintiffs' contention that the purposeful availment test also applied to this case. First, the panel held that the claims at issue were premised on alleged tortious conduct by defendants, and therefore, the purposeful availment test did not apply. Second, the panel held that even if the test applied, plaintiffs' allegations as to the relevant conduct were insufficient to show purposeful availment.

Judge Kleinfeld dissented because he concluded that the majority misinterpreted, and misapplied, the law. Judge Kleinfeld would hold that the district court erred in finding that it could not exercise personal jurisdiction over defendants.

## COUNSEL

Kenneth Layne Morrill (argued), Morrill & Aronson PLC, Phoenix, Arizona, for Plaintiffs-Appellants.

Anthony S. Vitagliano (argued), Phoenix, Arizona; Ed Hendricks Jr., Meyer Hendricks PLLC, Phoenix, Arizona; for Defendants-Appellees.

## OPINION

KRONSTADT, District Judge:

K. Layne Morrill ("Morrill"), an attorney who resides in Arizona, and the law firm where he practices, Morrill & Aronson, P.L.C. ("Morrill & Aronson"), which is also located in Arizona (collectively "Plaintiffs"), brought claims in the District of Arizona for abuse of process and wrongful institution of civil proceedings. The complaint named five defendants. The District Court dismissed the action, concluding that there was no personal jurisdiction over any defendant. Plaintiffs appealed. We affirm.

## I. BACKGROUND

In December 2008, Plaintiffs began representing Gary Tharaldson (a Nevada resident), Club Vista Financial Services, L.L.C. (a Nevada corporation whose principal place of business is in Nevada), and Tharaldson Motels, II, Inc. (a North Dakota corporation whose principal place of business is in Nevada) (collectively "Tharaldsons") in connection with a failed condominium construction project in Las Vegas, Nevada. In January 2009, the Tharaldsons filed a civil action in the Eighth District Court of Clark County, Nevada ("Tharaldson Litigation"), in which Plaintiffs were counsel. Through that action, the Tharaldsons sought to be relieved of obligations associated with their previous guaranty of a $100 million construction loan made in connection with the condominium project. Plaintiffs continued to represent the Tharaldsons in that litigation until June 2011.

The defendants in the Tharaldson Litigation were Scott Financial Corporation ("Scott Financial") (a North Dakota Corporation with its principal place of business in Nevada)

and its sole shareholder and officer, Bradley J. Scott (a North Dakota resident) (collectively "Scott Parties"). J. Randall Jones ("Jones"), who is a resident of Nevada, represented the Scott Parties in the Tharaldson Litigation. During that representation, Jones practiced with Kemp, Jones & Coulthard, L.L.P., which is a law firm based in Nevada, and Harrison, Kemp & Jones, Chartered, which is a Nevada law firm and professional corporation. The Scott Parties, Jones and the two law firms are the defendants in this action ("Defendants").

Plaintiffs claim that, during the Tharaldson Litigation, Defendants "engaged in a campaign to harm [Plaintiffs]" in retaliation for their role as counsel to the Tharaldsons. The first step in this alleged campaign occurred in October 2010, which was five months before the scheduled trial date. At that time, the Scott Parties sought to depose Morrill and his partner, Martin Aronson. As part of that process, the Scott Parties commenced companion civil proceedings in an Arizona Superior Court seeking to obtain a separate deposition subpoena for each witness. At that time, these civil proceedings were required by Arizona Rule of Civil Procedure 30(h) when an out-of-state party sought to depose a person who resided in Arizona. Ariz. R. Civ. P. 30(h) (2010) (deleted August 30, 2012, effective January 1, 2013).[1] Jones represented the Scott Parties in those proceedings.

---

[1] The relevant portion of Rule 30(h) provided: "When an action is pending in a jurisdiction foreign to the State of Arizona and a party or a party's attorney wishes to take a deposition in this state, it may be done and a subpoena or subpoena duces tecum may issue therefor from the Superior Court of this state. The party or attorney shall file, as a civil action, an application, under oath, captioned as is the foreign action[.]"

An Arizona Superior Court issued the requested subpoenas, and Morrill and Aronson were served. Morrill and Aronson then brought a motion to quash the subpoenas in the Arizona Superior Court. They argued that the "true purpose in taking the depositions . . . was to pry into what [Plaintiffs] had learned about the [Tharaldson] case and to obtain privileged information and to attempt to drive a wedge between [Plaintiffs] and their clients" in that litigation. Jones was admitted *pro hac vice* in Arizona so that he could participate in the proceedings with respect to the motion to quash. The Scott Parties filed an opposition to the motion, and Jones appeared at the hearing on the motion that was held in the Arizona Superior Court. At the conclusion of the hearing, the Superior Court judge granted the motion. However, that order was without prejudice to having the issue reviewed and decided *de novo* by the Special Discovery Master in Nevada who was overseeing discovery disputes in the Tharaldson Litigation. As the Superior Court judge explained, "I want the minute entry to reflect that this Court does not intend in any way to suggest to Floyd A. Hale, Special Master, what he ought to rule with regard to the matters which will finally be briefed [for] him on December 3rd, 2010."

The Scott Parties then provided Special Master Hale with Plaintiffs' motion to quash and their response that had been filed in the Arizona Superior Court. Special Master Hale denied the motion to quash and ruled that the depositions of Morrill and Aronson could proceed. Plaintiffs appealed that order through the Nevada courts, including to the Nevada Supreme Court. The Nevada Supreme Court held that the depositions could proceed if the Scott Parties successfully demonstrated that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and

(3) the information is crucial to the preparation of the case." Thereafter, the Scott Parties elected not to proceed further, and the depositions were not taken.

In April 2011, the Scott Parties brought a defamation action against Plaintiffs in a Nevada court. It was based on alleged statements made by Plaintiffs to a Nevada mortgage lender during the course of discovery in the Tharaldson Litigation. The Scott Parties effected service of the complaint on Plaintiffs in Arizona. Plaintiffs argued that the action was without merit in light of the broad litigation privilege that applies under Nevada law to statements made during a pending judicial proceeding. After the Scott Parties declined to dismiss the action voluntarily, Plaintiffs moved for summary judgment. Their motion was granted. The Nevada Supreme Court affirmed that ruling.

In May 2011, Jones filed a grievance with the Nevada State Bar "alleging that Morrill acted unethically and unprofessionally." The Screening Panel of the Nevada State Bar decided not to initiate disciplinary proceedings against Morrill, and dismissed the complaint without prejudice.

In June 2011, the Tharaldsons elected to retain new counsel to represent them in the Tharaldson Litigation. Plaintiffs contend that the aforementioned conduct of Defendants "was a factor that contributed to the . . . decision to retain new trial counsel."

Based on the foregoing alleged conduct, Plaintiffs brought the present action in the District of Arizona. As noted, it advances claims against Defendants for abuse of process and wrongful institution of civil proceedings. As also noted, Defendants moved to dismiss the complaint for lack of personal jurisdiction. The District Court granted the

motion, concluding that there was no personal jurisdiction over any of the Defendants.

## II. STANDARD OF REVIEW

We review dismissals for lack of personal jurisdiction *de novo*. *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 671 (9th Cir. 2012). When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because no evidentiary hearing occurred in this action, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). All uncontroverted allegations in the complaint are deemed true, and factual disputes are to be resolved in favor of the non-moving party. *Id.*

## III. ANALYSIS

### A.  Standards for Establishing Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Arizona law permits the exercise of personal jurisdiction to the extent permitted under the United States Constitution. *See* Ariz. R. Civ. P. 4.2(a). Therefore, the determination whether the District Court had personal jurisdiction over Defendants is subject to the terms of the Due Process Clause of the Fourteenth Amendment.

Constitutional due process requires that defendants "have certain minimum contacts" with a forum state "such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts are shown if the defendant has "continuous and systematic general business contacts" with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction). *Schwarzenegger*, 374 F.3d at 800–02.

Plaintiffs do not contend that Defendants are subject to general jurisdiction in Arizona. Instead, they argue that Defendants are subject to specific jurisdiction there. We apply a three-part test to determine whether a defendant has sufficient contacts to be subject to specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (citation omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### B. Defendants' Actions Were Not Purposefully Directed at Arizona

Under the first prong of the test for specific personal jurisdiction, Plaintiffs must show that Defendants purposefully directed their activities toward Arizona, or purposefully availed themselves of the privilege of conducting activities there. We generally apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct. *Id.* at 802. The latter test applies here given the nature of the underlying claims.

Purposeful direction "requires that the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 803 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). Actions may be directed at the forum state even if they occurred elsewhere. *Id.* However, "random, fortuitous, or attenuated contacts" are insufficient to create the requisite connection with the forum. *Burger King*, 471 U.S. at 475 (internal quotation marks omitted). An intentional act is one "denot[ing] an external manifestation of the actor's will . . . not includ[ing] any of its results, even the most direct,

immediate, and intended." *Wash. Shoe*, 704 F.3d at 673–74 (quoting *Schwarzenegger*, 374 F.3d at 806).

Plaintiffs claim that Defendants engaged in conduct that was sufficient to show that they "committed an intentional act" expressly aimed at the forum state of Arizona. That conduct included the following:

- Making phone calls, sending letters, mailing pleadings and discovery documents, and sending emails to Plaintiffs in Arizona.

- Filing civil actions in Arizona in order to have deposition subpoenas issued for Morrill and Aronson, and serving those subpoenas and notices of deposition on them in Arizona.

- Filing an opposition to Plaintiffs' motion to quash the subpoenas that was brought in the Arizona Superior Court, and appearing *pro hac vice* in those proceedings, including at the hearing on the motion.

- Seeking a ruling by Special Master Hale on the motion to quash by submitting to him copies of the briefs that had been filed in the Arizona Superior Court, and after the decision by Special Master Hale that denied the motion, opposing Plaintiffs' appeals in the Nevada courts.

- Filing the defamation action brought by the Scott Parties against Plaintiffs in Nevada, serving the complaint in that action on Plaintiffs in Arizona, and pursuing the claims for defamation until Plaintiffs prevailed on their motion for summary judgment.

Thereafter, appealing that order to the Nevada Supreme Court.

As the Supreme Court stated in *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014), the "mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." Instead, two factors are considered in determining whether an action is expressly aimed at the forum state:

> (1) First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State. . . . Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.

> (2) Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

*Id.* at 1122 (citations omitted).

In *Walden*, an agent of the federal Drug Enforcement Administration seized $97,000 in cash from two professional gamblers at an airport in Atlanta, Georgia. The gamblers were citizens of Nevada. Thereafter, the agent assisted in drafting an allegedly fraudulent affidavit in support of the claim of probable cause for the seizure. *Id.* at 1120. The

gamblers brought a *Bivens* action[2] against the agent in the District of Nevada, seeking damages for alleged violations of their Fourth Amendment rights. *Id.* The District Court dismissed the action after concluding that there was no personal jurisdiction over the agent in Nevada. We reversed. That decision concluded that the agent "had 'expressly aimed' his submission of the allegedly false affidavit at Nevada by submitting the affidavit with knowledge that it would affect persons with a 'significant connection' to Nevada." *Id.* (citations omitted).

The Supreme Court reversed in a unanimous decision. The Court concluded that the agent had not expressly targeted the state of Nevada. He had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada," and for these reasons had "formed no jurisdictionally relevant contacts with Nevada." *Id.* at 1124. The Court added that the alleged harm was not sufficiently linked to Nevada. The gamblers "would have experienced this same lack of access [to the confiscated funds] in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had." *Id.* at 1125.

*Walden* distinguished *Calder v. Jones*, 465 U.S. 783 (1984), in which the Court affirmed a finding of personal jurisdiction in California over two Florida residents. Those defendants had written and edited an allegedly libelous article about a California resident that was published in the National Enquirer. *Id.* at 783. Although that publication was circulated throughout the country, the Court found that the

---

[2] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

actions of the authors "were expressly aimed at California." *Id.* at 789. As *Walden* explained:

> The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens.

134 S. Ct. at 1123–24 (citations omitted).

Plaintiffs rely on this language to support their contention that the "crux" of their claims "is the reputational injury [Defendants] intentionally caused [Plaintiffs] to suffer at their Arizona Domicile." They argue that, "[l]ike [the] defamation in *Calder*, abuse of process and [wrongful institution of civil proceedings] were not complete until [Plaintiffs] suffered in Arizona the harm from the [Defendants'] wrongful conduct."

Plaintiffs' argument is unpersuasive. In *Calder* the defendants published the allegedly defamatory statements in the forum state, and the claimed harm to the plaintiff occurred when the residents of that state read them. It was the publication itself that caused the alleged injury in the forum state. Consistent with the standard of *Walden*, this "relationship . . . ar[o]se out of contacts that the defendant

himself create[d] with the forum State." 134 S. Ct. at 1122. Here, by contrast, Plaintiffs elected to work outside of Arizona in order to participate as counsel in the Tharaldson Litigation that was conducted in Nevada. The allegedly tortious conduct here involved very limited communications and proceedings in Arizona, all of which arose out of and were component parts of the litigation in Nevada. Any links to Arizona, which included Defendants' communications with Plaintiffs by telephone and email about the Tharaldson Litigation, occurred only because it happened to be where Plaintiffs resided. The primary effects of Defendants' actions, including the alleged harm, were tied directly to the litigation in Nevada. This is confirmed by the order issued by the Arizona Superior Court that quashed the subpoenas issued in connection with the Tharaldson Litigation. It was without prejudice to a *de novo* review by the Special Master in Nevada who had been appointed in the Tharaldson Litigation. He later denied the motions, a ruling that was ultimately affirmed, with limitations, by the Nevada Supreme Court. Thus, even the deposition subpoena process, which is a significant basis for Plaintiffs' claim of jurisdiction in Arizona, was definitively adjudicated in Nevada.

Because Defendants knew that Plaintiffs were from Arizona, it was foreseeable that some injury to them could have been experienced there based on the actions taken by Defendants in connection with the Tharaldson Litigation. Harm suffered in the forum state is a necessary element in establishing purposeful direction. *See Schwarzenegger*, 374 F.3d at 802. However, the potential foreseeability of some incidental harm to Plaintiffs in Arizona due to substantial litigation that was pending in Nevada, without more, does not show that Defendants expressly targeted the forum state. "Such reasoning improperly attributes a

plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. It also obscures the reality that none of [the] challenged conduct had anything to do with [the forum state] itself." *Walden*, 134 S. Ct. at 1125. *Calder* adopted the rule that to establish the basis for specific personal jurisdiction, a tort must involve the forum state itself, and not just have some effect on a party who resides there.

This case has more in common with *Walden* than *Calder*. In *Walden*, the sole connection to the forum state of Nevada was that plaintiffs resided there. The relevant actions–the seizure of the money and the preparation of the affidavit–occurred in Georgia, and were related to the plaintiffs' brief presence there. Here, Plaintiffs' Complaint alleges that Defendants' tortious activities were undertaken for "ulterior purposes," including the following:

> (a) to invade the attorney-client privilege between Plaintiffs and the Tharaldson Entities (as well as attorney work product) for tactical advantage in the Tharaldson Proceeding;

> (b) to interfere with Plaintiffs' trial preparation in the Tharaldson Proceeding;

> (c) to punish Plaintiffs for discovering and marshalling [evidence contrary to Defendants' position in the Tharaldson Proceeding]; . . . and

> (d) to manufacture the appearance of a conflict of interest with respect to

> Plaintiffs as counsel in the Tharaldson
> Proceeding that might lead the
> Tharaldson Entities either to settle or to
> switch trial counsel shortly before the
> trial . . . .

According to Plaintiffs, all of these alleged actions had a common and improper purpose–to gain an advantage for Defendants and their clients in the Tharaldson Litigation that was proceeding in Nevada. From this they contend that these actions did not constitute legitimate litigation conduct. To be sure, the purpose of a party's action is not the lodestar for our jurisdictional determination; rather, we consider the nature of the action itself and the resulting harm. Under the facts of the instant case, however, the driving force behind Defendants' actions–the ongoing litigation in Nevada–also provides the framework within which the actions occurred and the foreseeable harm would result. In other words, the allegedly tortious acts were not simply *motivated* by, or designed to achieve a benefit in, the Nevada litigation, they were component parts of that litigation. Indeed, the manner in which the Defendants allegedly conducted the litigation in Nevada, *i.e.,* the Tharaldson Litigation, the defamation action and the Nevada State Bar proceeding, is the basis for Plaintiffs' claims. For example, Defendants pursued the depositions at issue as part of the discovery process in the Tharaldson Litigation. The litigation challenging the right to take the depositions took place under its auspices, as confirmed by the deference of the Arizona Superior Court to the Nevada Special Master when issuing its ruling on Plaintiffs' motion to quash. The involvement of Arizona procedures was solely a by-product of Plaintiffs' residence. Further, as noted, the propriety of the subpoenas was ultimately decided by the Nevada Supreme Court.

The facts of this case may not be as clear-cut as those in *Walden*: The *Walden* defendant had "never traveled to . . . or sent anything or anyone to" the forum state. *Walden*, 134 S. Ct. at 1124. Here, Defendants did both. However, they did so in the course of complying with procedural requirements for advancing litigation being prosecuted entirely in another state, not as a separate action in which substantive claims were presented. Therefore, as in *Walden*, the forum state was only implicated by the happenstance of Plaintiffs' residence; if other states had procedural rules similar to those that were in place in Arizona at the time that the Tharaldson Litigation was pending and Plaintiffs resided in one of them, they would have "experienced this same [alleged tortious conduct] in California, or Mississippi, or wherever else they might have [resided]." *Id.* at 1125.

Service of counsel at the address of that person's office is contemplated by Nevada law. Nev. R. Civ. P. 5(b)(2) (allowing service on an attorney by in-person service, delivery to the attorney's office, mailing to the attorney's last known address, or by electronic delivery where prior consent has been provided). Because these actions were undertaken as part of the Tharaldson Litigation, which was pending in Nevada, they did not constitute independent wrongdoing. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121.

Nor do the actions taken by the Defendants in Arizona in an effort to depose Morrill and Aronson as part of the Tharaldson Litigation provide a sufficient basis to show that the alleged torts were "expressly aimed" at Arizona. As the District Court correctly concluded, the Scott Parties commenced the companion civil proceedings in Arizona

because they were required to do so in order to subpoena Plaintiffs for depositions in the Nevada litigation. At that time, Arizona had adopted the commonplace procedural requirement that a party seeking to depose an Arizona resident in connection with a civil action pending in another state had to initiate a civil action in Arizona. Ariz. R. Civ. P. 30(h) (deleted August 30, 2012, effective January 1, 2013). Such a process permitted an Arizona witness the benefit of a more convenient forum in which to raise any challenge to the subpoena.[3] Jones appeared in the Arizona Superior Court as part of that process.

"Physical entry into the State–either by the defendant in person or through an agent, goods, mail, or some other means–is certainly a relevant contact." *Walden*, 134 S. Ct. at 1122 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75 (1984)). However, physical entry that is merely

---

[3] This rule was similar to the version of Fed. R. Civ. P. 45 that was in place prior to its amendment in 1991. Until that time, Rule 45 required that a party to litigation in one judicial district, who sought to take a deposition of a person who resided in another district, seek the issuance of a subpoena from "the district court for the district in which the deposition is to be taken." Fed. R. Civ. P. 45(d) (1991). After the 1991 Amendment, a party seeking to subpoena an out-of-district deponent no longer had to apply directly to the clerk of the district where the deposition would proceed. However, the subpoena had to "issue . . . from the district in which the deposition [was] to be taken." Fed. R. Civ. P. 45(a)(2) (1992) and Comment. This requirement remained in place until Rule 45 was amended in 2013. The Rule now requires the issuance of the subpoena from the district in which the case is pending. Fed. R. Civ. P. 45(a)(2). However, it also provides that disputes as to the scope or validity of the subpoena are to be addressed by the court in the district where the deponent resides unless there are exceptional circumstances that warrant the transfer of those disputes to the court that issued the subpoena, or if the person whose deposition is sought agrees to such a transfer. Fed. R. Civ. P. 45(f).

incidental to an out-of-state transaction does not satisfy the constitutional minimum contacts requirement. *See Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (defendant's two trips to California did not establish personal jurisdiction because the trips were short, defendant's role in California was "relatively small," and both trips "grew incidentally" out of the broader non-California relationship).[4]

---

[4] The dissent suggests that this analysis differs from that adopted by the Sixth Circuit in *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 896 (6th Cir. 2017). We disagree. The factual bases for claimed jurisdiction in the two cases are quite different. In *MAG IAS Holdings, Inc.*, the plaintiff was a Michigan corporation that brought claims there against a defendant who was the former CEO of plaintiff's parent company, the "MAG Group." *Id*. at 897. The defendant, a German citizen residing in Germany, contested jurisdiction. *Id*. The claims included breach of fiduciary duty, professional negligence and waste of corporate assets based on an alleged scheme by defendant and others to "engineer a 'fire sale' of MAG Group assets for [defendant's] own personal benefit." *Id*. Applying *Walden*, the Sixth Circuit concluded that there was personal jurisdiction over the defendant. *Id*. at 901. This determination was based on the defendant's substantial, alleged contacts with Michigan:

> [Defendant] purposefully availed himself of the benefits of doing business in Michigan by: (1) being CEO of the MAG Group and holding himself out as having "global authority" over MAG operations, including those in Michigan; (2) directing and controlling MAG operations in Michigan; (3) traveling to Michigan on two occasions to meet with executives and customers; (4) initiating calls and emails to the state each week to direct MAG business; (5) transferring business from Michigan to Germany to prop up the German operations at the expense of those in Michigan; (6) engaging Michigan-based executives in strategic financing and sales negotiations; and (7) arranging for the Michigan

Nor did the service of the defamation complaint on Plaintiffs in Arizona reflect an action directed toward Arizona. The defamation action was filed in Nevada. The claimed defamatory statements were made by Plaintiffs in Nevada, to a Nevada resident and in the course of discovery in the Tharaldson Litigation. Service of process on Plaintiffs where they resided was consistent with the requirements of Nevada law. Nev. R. Civ. P. 4(d)(6) (upon filing of a complaint, process is to be served "to the defendant personally, or by leaving copies thereof at the defendant's dwelling house or usual place of abode . . . or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process"). It was not otherwise linked to Arizona. *Cf. Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985) (in malicious prosecution action, no personal jurisdiction in Indiana over defendants who were California attorneys who had "served interrogatories [in Indiana], requested the production of documents, and caused the plaintiff to respond to five complaints," because "defendants filed these motions on behalf of their clients in a California court pursuant to a California lawsuit, and it would be unreasonable to require the defendants to appear in Indiana to defend this suit on the basis of such attenuated contacts").

The dissent disagrees with this overall analysis. It suggests that considering the challenged actions as ones undertaken to advance the interests of Defendants' clients in

---

operations to pay part of his salary by instituting a €1.5 million transfer payment from MAG Automotive to MAG Germany.

*Id.* Because the contacts with Arizona by the Defendants in this action are not of a similar nature, there is no conflict with *MAG IAS Holdings, Inc.*

the Tharaldson Litigation creates a new rule that does not comport with the controlling standards. The dissent describes the new rule as one under which a defendant's purpose for an alleged tortious act has greater jurisdictional significance than where the challenged act occurred. The hypothetical that is offered in support of this position involves conduct by a defendant that has a physical effect in the state where jurisdiction is disputed, *e.g.,* throwing a rock through a window of the plaintiff's residence in the forum state.

No such rule is adopted here. As previously explained, Defendants' subjective motivations are not material to the analysis–it simply happens that, under the facts before us, the reason for Defendants' action (litigation in Nevada) also provides the relevant context within which we must assess the nature and consequences of Defendants' alleged acts. As in *Walden*, when a defendant's relationship to the forum state arises from the fortuity of where the plaintiff resides and the corresponding procedural requirements for the issuance of a deposition subpoena, it does not provide the basis for specific jurisdiction there.

Our analysis does not conflict with the well-established rule–to which the dissent alludes–that, when a defendant engages in tortious activity toward a plaintiff in the state where that plaintiff resides, the defendant is subject to personal jurisdiction there. *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257, 1258–60 (9th Cir. 1989) (personal jurisdiction in Arizona established by communications sent by out-of-state defendant to recipients in Arizona that allegedly interfered with plaintiff's contractual and other rights). Defendants' conduct in Arizona occurred as part of the required process for pursuing discovery and serving Plaintiffs in connection with the

litigation in Nevada. The outcome would be different if, as suggested by the hypothetical presented by the dissent, an attorney had traveled to Arizona, not to appear at a hearing on a motion to quash a subpoena, but to throw a rock through the window of the Arizona residence of opposing counsel in litigation that was pending in Nevada. The reason for such inappropriate conduct could have been the animosity between counsel that resulted from their interaction during the litigation in Nevada. However, the throwing of the rock would not have been required, or in any manner justified, by the litigation process there.[5]

To establish personal jurisdiction over Defendants in this action, Plaintiffs were required to make a prima facie

---

[5] A consideration of a modified version of the hypothetical presented by the dissent confirms this analysis. Suppose that an attorney from Arizona was representing a client in a contentiously litigated matter that was pending in Nevada. Opposing counsel, who was a citizen of Nevada, threw a rock through the window of the hotel room in Nevada in which the Arizona attorney was staying during the litigation. The Arizona attorney then brought a tort action in Nevada in which opposing counsel was named as the defendant. In the course of the litigation, the defendant wished to depose certain partners of the plaintiff who had witnessed the alleged tort. As a result, the defendant initiated proceedings in Arizona–like the ones here–to obtain deposition subpoenas for these non-parties. The proposed deponents then moved to quash the subpoenas in a proceeding in the Arizona Superior Court. The defendant, who was representing himself, appeared *pro hac vice* in Arizona to oppose the motions. The motions were granted. At that point, the plaintiff elected to re-file the tort action in Arizona, claiming that, by causing the issuance of the subpoenas and participating in the proceedings on the motions to quash, defendant had engaged in conduct related to the alleged tort that subjected him to specific jurisdiction in Arizona. This claim of specific jurisdiction would fail for the same reasons stated above. The ancillary proceedings in Arizona would not constitute a sufficient basis for jurisdiction over the defendant with respect to the underlying event that occurred in Nevada.

showing that Defendants' alleged actions were directed at Arizona, not just at individuals who resided there. Plaintiffs failed to do so. The alleged tortious conduct was a component part of the litigation in Nevada. Contacts with Arizona, including the appearance at the hearing on the motion to quash, were quite limited and ancillary to the litigation in Nevada. These conclusions are consistent with our recent statement of the principles governing specific jurisdiction. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–24 (9th Cir. 2017).

**C. Defendants Did Not "Purposefully Avail" Themselves of the Benefits of Arizona Law**

As noted, a different test for personal jurisdiction is applied in cases that arise from disputes about contracts. Plaintiffs argue that this test also applies to the present action. Under this test, we ask whether a defendant "purposefully availed" itself of the laws of the forum state. The Supreme Court has defined purposeful availment as

> where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp.*, 471 U.S. at 475–76 (citations omitted).

Plaintiffs argue that the Defendants "expressly invoked the 'benefits and protections' of the laws of Arizona" in taking all of the actions described above with respect to the deposition subpoenas. These actions included the commencement of the civil actions as to the deposition subpoenas, service of the deposition notices, opposing the motion to quash and appearing at the hearing before the Arizona Superior Court.

Plaintiffs' arguments fail for two reasons. *First*, the claims at issue are premised on alleged tortious conduct by Defendants. Therefore, the purposeful availment test does not apply. *See Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995) ("[W]e apply different purposeful availment tests to contract and tort cases. . . . [M]erely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident. In tort cases, however, jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state." (citations omitted)).

*Second*, even if the test applied, Plaintiffs' allegations as to the relevant conduct are insufficient to show purposeful availment. For the reasons stated earlier with respect to the application of the purposeful direction test, Defendants' contacts with Plaintiffs arose from the Tharaldson Litigation in which the principal parties here were opposing counsel. These contacts were related not to Plaintiffs' status as residents of Arizona, but to their role as counsel in the Tharaldson Litigation, which was pending in Nevada. Therefore, Defendants' actions did not create a "substantial connection" with Arizona, or give rise to any "ongoing obligations" there. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008).

## IV. CONCLUSION

For the foregoing reasons, the judgment dismissing this action for lack of personal jurisdiction is **AFFIRMED**.

---

KLEINFELD, Senior Circuit Judge, dissenting:

I respectfully dissent.  The majority gets the law wrong and misapplies it to the extent it is stated correctly.

## I.

This is a civil procedure case arising from uncivil conduct by lawyers in hardball litigation.  Because there have been no evidentiary findings or hearings, the plaintiff need make only a prima facie showing of jurisdiction, "the court resolves all disputed facts in favor of the plaintiff," and the allegations in the complaint are for purposes of decision assumed to be true.[1]

In a now-settled Nevada lawsuit, Arizona lawyer K. Layne Morrill and his law firm represented developer Gary Tharaldson and related entities against Bradley J. Scott and his related entities.  Scott and his companies were represented by J. Randall Jones and two law firms where Jones practiced.  The litigation concerned alleged fraud in inducing Tharaldson to participate in a $100 million loan to a failed Las Vegas real estate venture.  Neither the fraud, the

---

[1] *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)); *Sher v. Johnson*, 911 F.2d 1357, 1360–61 (9th Cir. 1990) (noting the court assumes allegations as true for purposes of determining jurisdiction).

real estate, the contracts relating to the development deal, nor Tharaldson are involved in the case before us now.

Instead, this lawsuit is about the hardball litigation tactics that Jones and Scott used against Morrill and his firm. Hardball litigation occurs when attorneys depart from the "high degree of civility and respect" on which "[o]ur adversarial system relies."[2]   Jones and Scott sought to depose Morrill and his partner Martin A. Aronson in Arizona even though Morrill and Aronson were opposing counsel, not percipient witnesses.  This tactic is often used for the sole purpose of driving a wedge between a lawyer and his client. Under the Arizona Rules of Civil Procedure at the time,[3] Jones and Scott filed a civil action in Arizona state court to subpoena Morrill and his law partner Martin Aronson to submit to depositions.  Morrill filed a motion to quash the subpoenas, or in the alternative, for a protective order.  Jones

---

[2] *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1263 (9th Cir. 2010).

[3] The relevant rule at the time, former Arizona Rule of Civil Procedure 30(h), stated:

> When an action is pending in a jurisdiction foreign to the State of Arizona and a party or a party's attorney wishes to take a deposition in this state, it may be done and a subpoena or subpoena duces tecum may issue therefor from the Superior Court of this state. The party or attorney shall file, as a civil action, an application, under oath, captioned as is the foreign action . . . .

Former Ariz. R. Civ. P. 30(h).  Arizona now conforms its rules to the Uniform Interstate Depositions and Discovery Act along with 36 other states.  Unif. Interstate Depositions & Discovery Act (2017).

appeared pro hac vice in Arizona Superior Court to oppose the motion.  In addition to the depositions, Jones and Scott filed a bar grievance in Nevada against Morrill, and in yet another lawsuit, they sued Morrill for defamation.

Nominally, all of Scott and Jones's hardball tactics failed.  The Arizona court granted the motion to quash the depositions.  Scott and Jones then argued before the special master in charge of discovery in the Nevada litigation to order the depositions.  Upon recommendation of the special master, a Nevada trial court ordered the depositions to take place.  Morrill appealed and the Nevada Supreme Court remanded the deposition proceedings, noting that seeking to make opposing counsel a witness "has long been discouraged and recognized as disrupting the adversarial nature of our judicial system."[4]  Jones and Scott did not pursue the depositions further.  The Nevada state court entered judgment for Morrill in the defamation suit, and the Nevada State Bar Screening Panel rejected disciplinary proceedings against Morrill.

But Jones and Scott won the war even though they lost all the battles.  Despite the fact that each of their attacks was ultimately determined to be without merit, Jones and Scott succeeded in destroying Morrill and his firm's relationship with their clients.  Tharaldson fired Morrill and his firm before the Nevada litigation settled.

To recoup the damage Morrill and his law firm suffered, they brought four claims against Scott, Jones, and their

---

[4] *Club Vista Fin. Servs., L.L.C. v. Eighth Judicial Dist. Court*, 276 P.3d 246, 248 (Nev. 2012) (quoting *Shelton v. Am. Motors Corp.*, 805 F.1323, 1327 (8th Cir. 1986)).

respective firms in the District Court for the District of Arizona. The claims alleged the torts of abuse of process and wrongful institution of civil proceedings for the depositions, and wrongful institution of civil proceedings for the defamation suit and the Nevada bar grievance.[5] The district court dismissed the case for lack of personal jurisdiction. Personal jurisdiction, not the merits of the attacks on Morrill, is the issue before us.

## II.

Arizona's long-arm statute allows for personal jurisdiction to the maximum extent allowed by the United States Constitution.[6] Morrill does not assert that Jones and Scott have "continuous and systematic general business contacts" with Arizona that would create general jurisdiction and allow Morrill to sue Jones and Scott for any claim in Arizona.[7] Morrill contends only that there exists specific jurisdiction, or in other words, that Jones and Scott's conduct

---

[5] Morrill later acknowledged that the bar grievance claim was barred by Nevada law. *See* Nev. S. Ct. Rule 106(1) ("All participants in the discipline process, including grievants, bar counsel staff, members of disciplinary panels, diversion and mentoring participants, and witnesses, shall be absolutely immune from civil liability. No action may be predicated upon the filing of a disciplinary complaint or grievance or any action taken in connection with such a filing by any of the participants.").

[6] Ariz. R. Civ. P. 4.2(a) (2016).

[7] *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004).

created minimum contacts with Arizona sufficient to enable an Arizona court to assert jurisdiction in this case.[8]

We apply a three-part test to determine if a court can exercise specific jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.[9]

The second and third prong of this test raise no serious issue in this case. For the second prong, the "but for" test is used to determine whether claims arise out of the contacts.[10] Here, the abuse of process and wrongful institution claims would not have occurred "but for" Jones entering Arizona to

---

[8] *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1984).

[9] *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

[10] *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

depose Morrill and Aronson, invoking the assistance of the Arizona courts, and suing Morrill for defamation.  For the third prong, Jones and his firm found it worthwhile to travel and litigate the depositions in Arizona.  So it is hard to imagine how it could be a denial of "fair play and substantial justice" to make them defend their actions in Arizona.

To decide the first prong, we must apply yet another test. In tort cases we generally apply the "purposeful direction test," and in contract cases we generally apply the "purposeful availment analysis."[11]  The separation is not absolute, but as this is a tort case, the purposeful direction test is generally the most appropriate.  That test, derived from *Calder v. Jones*,[12] requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."[13]

For the first prong, whether the defendant has committed an intentional act, all a plaintiff must show is that a defendant has an "intent to perform an actual, physical act in the real world."[14]  There were a multitude of intentional acts in this case, such as opening a civil action to compel depositions

---

[11] *Schwarzenegger*, 374 F.3d at 802.

[12] 465 U.S. 783 (1984).

[13] *Schwarzenegger*, 374 F.3d at 805 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

[14] *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 806).

and traveling to Arizona to appear in Arizona Superior Court to compel the depositions. This prong is clearly met.

The second prong, whether a defendant's actions are "expressly aimed at the forum state," requires more analysis.[15] The language of this prong comes from *Calder*, and to understand the prong it is necessary to understand the case it comes from. In *Calder*, actress and California resident Shirley Jones sued two Florida-based editors of the National Enquirer, a tabloid with a large California circulation, for libel.[16] The editors had few relevant contacts with California other than writing the allegedly libelous story.[17] But the Court nonetheless found that the editors had enough minimum contacts with California to establish jurisdiction there because the editors had "expressly aimed" an intentional tort at a California resident and therefore they could "reasonably anticipate being haled into court" in California.[18]

*Calder* is not the only relevant case, however. In *Walden v. Fiore* the Supreme Court clarified what minimum contacts are needed with the forum state in an intentional tort case. There, Nevada gamblers had a suitcase of money seized by a Georgia police officer at the Atlanta Airport.[19] The

---

[15] *Id.*

[16] *Calder*, 465 U.S. at 784.

[17] *Id.* at 784–86.

[18] *Id.* at 789–90 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[19] *Walden v. Fiore*, 134 S. Ct. 1115, 1119 (2014).

gamblers alleged that the officer helped draft a false probable cause affidavit to support forfeiture of the money, and they filed a lawsuit in Nevada.[20] The Supreme Court reaffirmed *Calder* but held that the Nevada court lacked personal jurisdiction because there were not "sufficient minimum contacts" with Nevada.[21] The Court noted that the officer's only contact with Nevada was that the gamblers happened to live there, and it concluded that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."[22] *Calder* and *Walden* serve as bookends for determining whether a defendant has sufficient minimum contacts with a forum state.

In this case, we need not resolve whether the defendants' conduct in Nevada, such as the defamation suit they filed against the Arizona lawyers, creates the minimum contacts needed for jurisdiction. Their conduct in Arizona plainly does. The defendants' contacts with Arizona are stronger than those the Supreme Court held to be sufficient in *Calder* because of their travel to and actions in Arizona. Unlike the Florida editors in *Calder* who had few direct contacts arising out of the suit with California,[23] and unlike the Georgia police officer in *Walden* who never visited Nevada,[24] Jones and Scott had direct and extensive contacts with Arizona. Jones filed a civil action in an Arizona state court. This was not meaningless paperwork but a new civil action to obtain

---

[20] *Id.* at 1119–20.

[21] *Id.* at 1123–24.

[22] *Id.*

[23] *Calder*, 465 U.S. at 784–86.

[24] *See Walden*, 134 S. Ct. at 1119–20.

a subpoena to compel Arizonans to submit to depositions. When a motion to quash was filed, Jones sought pro hac vice admission in the Arizona court. He then traveled to Arizona to argue the motion. Routine matters in foreign states are often handled by local counsel. But Jones made the trip to Arizona to argue the motion himself. As the 39-page transcript shows, the argument was no formality. It was a lengthy and substantial adversarial hearing, in which Jones must have invested considerable effort. Had Jones succeeded in defeating the motion to quash, he would have spent hours or days deposing Morrill and Aronson in Arizona. Such extensive contacts are more than enough to satisfy the second prong and show that Jones and Scott expressly aimed their actions at Arizona.

Finally, for the third prong of the purposeful direction test, a defendant must know the harm was "likely to be suffered" in the forum state.[25] This prong can be met even if "the bulk of the harm" occurs outside the forum so long as the defendant knew that some harm would occur in the forum state.[26] While Scott and Jones may have been motivated by the Nevada litigation, they used an Arizona court to direct harm at Arizona lawyers in Arizona. Using hardball litigation tactics, such as deposing opposing counsel to drive a wedge between a firm and client, can damage not only a firm's business but also its reputation. Word of a firm losing its client in a multimillion-dollar litigation is likely to

---

[25] *Collegesource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)).

[26] *Brayton Purcell LLP*, 606 F.3d at 1131 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc)).

spread and cause lasting damage. We have held that economic and reputational loss to a law firm are foreseeable harms felt in the law firm's home state.[27] Thus, much as the National Enquirer editors in *Calder* could foresee the emotional harm and reputation damage to the California actress from their false story,[28] Jones and Scott could foresee the economic and reputational damage to Morrill in Arizona.

Because all three prongs of the purposeful direction test are met, the remaining prong of the minimum contacts test is met. The district court therefore erred in finding that it could not exercise personal jurisdiction over Scott and Jones.

## III.

The majority creates a new and erroneous legal rule: if the plaintiff has acted in the defendant's state, and if the "driving force behind" the defendant's conduct arises from litigation elsewhere,[29] then the courts of the plaintiff's state lack jurisdiction over the defendant, despite the defendant's travel to and conduct in the plaintiff's state. Even filing a lawsuit in the courts of the plaintiff's state and traveling there to litigate it will not, under the majority's view, suffice for jurisdiction there. There is no support in the case law for the majority's new rule.

The majority creates this erroneous rule because it focuses on the "driving force behind" the defendants' conduct, the so-called "framework" for the conduct, rather

---

[27] *See id.*

[28] *Calder*, 465 U.S. at 789–90.

[29] *See* Maj. op. at 17.

than on the defendants' contacts with the state of Arizona.[30]
Analogizing this case to *Walden*, the majority discusses the
purpose of the contacts listed in the complaint rather than the
contacts themselves:

> According to Plaintiffs, all of these alleged
> actions had a common and improper
> purpose–to gain an advantage for Defendants
> and their clients in the Tharaldson Litigation
> that was proceeding in Nevada. . . . [T]he
> driving force behind Defendants' actions–the
> ongoing litigation in Nevada– . . . provides
> the framework within which the actions
> occurred and the foreseeable harm would
> result.[31]

The defendants' contacts with Arizona were indeed related
to the plaintiffs' conduct in the Nevada lawsuit. And *Walden*
does hold that a "plaintiff cannot be the only link between
the defendant and the forum."[32] But in our case, Morrill was
far from the "only link" with the forum. The defendants
developed sufficient contacts with the state of Arizona by
filing a civil action in Arizona, traveling to Arizona,
appearing pro hac vice in an Arizona court, and arguing the
new case in an adversarial hearing. Nor was the foreseeable
harm caused by defendants limited to the Nevada litigation
as the majority seems to suggest.[33] The foreseeable harm of

---

[30] Maj. op. at 17–18.

[31] Maj. op. at 1717.

[32] *Walden*, 134 S. Ct. at 1122.

[33] Maj. op. at 17–18.

defendants' conduct included economic effects in the state of Arizona as well as reputational loss to the plaintiffs in Arizona.[34] The defendants' conduct was designed to harm the Arizona plaintiffs in Arizona. And that harm— destroying the Arizona plaintiffs' relationship with their client and damaging their professional reputation— foreseeably would be felt in Arizona, even if it was only a means to an end (winning the Nevada lawsuit) from the viewpoint of Scott and Jones.

*Walden* offers no support for disregarding connections to the forum state, as the majority does, because of their relationship to a plaintiff's conduct elsewhere. If because of something you were doing to me in Nevada, I traveled to Arizona and threw a rock through your window, my conduct's relationship to Nevada does not deprive an Arizona court of jurisdiction over your tort action—even if the "driving force behind" what I did to you was for the purpose of gaining an advantage over you in Nevada, and even if what you did to me in Nevada "provide[d] the framework within which" I threw the rock.[35]

The majority's new rule also finds no basis in Supreme Court precedent interpreting *Walden*. In *Bristol-Myers Squibb Co. v. Superior Court of California*, the Supreme Court summarized *Walden* as concerning a defendant's lack of contacts, not the "framework" within which they occurred:

> In [*Walden*], Nevada plaintiffs sued an out-of-state defendant for conducting an

---

[34] *Cf. Brayton Purcell LLP*, 606 F.3d at 1131.

[35] *Contra* Maj. op. at 17–18.

allegedly unlawful search of the plaintiffs
while they were in Georgia preparing to
board a plane bound for Nevada. We held that
the Nevada courts lacked specific jurisdiction
even though the plaintiffs were Nevada
residents and "suffered foreseeable harm in
Nevada." Because the "relevant conduct
occurred entirely in Georgi[a] . . . the mere
fact that [this] conduct affected plaintiffs
with connections to the forum State d[id] not
suffice to authorize jurisdiction.[36]

Nor is there any justification for the majority's rule in the
two published cases interpreting *Walden* in this circuit. In
*Williams v. Yamaha Motor Co. Ltd.*,[37] we summarized
*Walden* as concerning the extent of a defendant's contacts,
not the "framework" within which they occurred:

[*Walden*] dealt with the scenario in which the
connection between the defendant and the
forum was provided only by the *plaintiff*, and
could aptly be described as "random,
fortuitous, or attenuated."[38]

And in *Picot v. Weston,* we applied *Walden* and found no
jurisdiction because the defendant committed all of his
tortious conduct out of state with no meaningful contacts

---

[36] 137 S. Ct. 1773, 1781–82 (2017).

[37] 851 F.3d 1015 (9th Cir. 2017).

[38] *Id.* at 1023–24 (quoting *Walden*, 134 S. Ct. at 1123).

with the forum state.[39]  Nowhere in *Williams* or *Picot* was the purpose for contacts analyzed, nor were substantial in-forum contacts disregarded because of an out-of-forum "framework."

The majority's new rule creates at least an implicit circuit split with the Sixth Circuit.  In *MAG IAS Holdings Inc. v. Schmückle*,[40] a Michigan company sued a German resident who was CEO of its parent company.  The German resident invoked *Walden* and argued that "because he targeted his conduct only at plaintiffs and not at Michigan itself" there was no jurisdiction.[41]  The Sixth Circuit rejected this view and held that "*Walden* simply holds that an out-of-state injury to a forum resident, standing alone, cannot constitute purposeful availment."[42]  "It would severely limit the availability of personal jurisdiction if every defendant could simply frame his conduct as targeting only the plaintiffs and not the forum state."[43]  In *Schmückle* and in our case, the out-of-state injury to the forum resident did not "stand alone."  So we should, as the Sixth Circuit did, conclude that *Walden* is distinguishable.

When the majority does get to discussing the defendants' contacts with Arizona (rather than their "driving force" or

---

[39] 780 F.3d 1206, 1214–15 (9th Cir. 2015).

[40] 854 F.3d 894 (6th Cir. 2017).

[41] *Id.* at 901.

[42] *Id.*

[43] *Id.*

the "framework within which" they occurred),[44] it characterizes them as a "component part" of the plaintiffs' conduct.[45]  The majority relies on an incorrect premise: that Scott's and Jones's filing of a new lawsuit in Arizona state court to depose plaintiffs was a "component part" of the parties' ongoing litigation in Nevada.[46]    It was not. Accepting plaintiffs' allegations as true, as we must at this stage,[47] the defendants' conduct was an illegitimate use of the Arizona court system to harm plaintiffs by driving a wedge between plaintiffs and their clients.    Courts in Arizona and Nevada acknowledged as much when they erected hurdles to the defendants' Arizona depositions so that the depositions were never taken.

While the Nevada lawsuit may have been the impetus for the defendants' conduct, their contacts—filing a civil action in Arizona, traveling to Arizona, appearing pro hac vice in an Arizona court, and arguing a new case in an adversarial hearing—were not "limited and ancillary" as the majority suggests.[48]  Certainly the lawyers' fees stemming from all of this work in Arizona would not be small.  And *Walden* stressed that "physical presence within the territorial jurisdiction," such as Jones entering Arizona to commit the

---

[44] Maj. op. at 17.

[45] Maj. op. at 15, 17–18, 24–25.

[46] *See id.*

[47] *Sher*, 911 F.2d at 1360–61.

[48] Maj. op. at 24.

alleged tort in this case, is "certainly a relevant contact."[49] So, although the Arizona conduct may have been the tail of the dog, it was a very big dog with a very big tail.

I do not understand the majority's argument that the defendants' conduct established only "the potential foreseeability of some incidental harm to Plaintiffs in Arizona."[50]   We have held that the economic and reputational loss to a law firm occurs in that firm's home state.[51]   There is nothing "incidental" about filing a new lawsuit, creating a rift between attorney and client, causing a client to fire his lawyer in the middle of litigation, causing a lawyer to lose a major client in a huge case, and causing both economic and reputational harm in the process.  While Morrill may have suffered harm in Nevada, that does not negate the harm defendants directed at Morrill in Arizona using the Arizona courts.  It is not required that a plaintiff suffer all of the harm in the forum state.[52]

Trial lawyers say of hardball litigation, "live by the sword, die by the sword."  Yet Scott and Jones avoid the jurisdictional consequences of both their Arizona-directed conduct and their conduct in Arizona.  Scott's and Jones's decision to bring the fight to Morrill and his firm in Arizona by availing themselves of the Arizona state courts subjected them to jurisdiction in Arizona to determine if their hardball litigation tactics were tortious.  The majority's opinion today not only allows Scott and Jones to use the Arizona legal

---

[49] *Walden*, 134 S. Ct. at 1122.

[50] Maj. op. at 15.

[51] *See Brayton Purcell LLP*, 606 F.3d at 1131.

[52] *Id.*

system against an Arizona resident yet avoid being held accountable in Arizona, but it will also deprive future plaintiffs of the ability to sue in the forum to which a defendant has traveled to do them harm. It is mistaken. The majority's "driving force" and "framework" test enables a tortfeasor to evade jurisdiction where his actions or their consequences occur, so long as the tortfeasor's purpose is to use the tort as a means to his own end that will occur elsewhere.