RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0093p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MAG IAS HOLDINGS, INC.; MAG US HOLDINGS, LLC,

        *Plaintiffs-Appellants*,

    *v.*

RAINER SCHMÜCKLE,

        *Defendant-Appellee*.

No. 16-1550

---

Appeal from the United States District Court for
the Eastern District of Michigan at Ann Arbor.
No. 5:15-cv-14010—John Corbett O'Meara, District Judge.

Argued: December 6, 2016

Decided and Filed: April 21, 2017

Before: GIBBONS, SUTTON, and WHITE, Circuit Judges.

---

## COUNSEL

**ARGUED:** William F Cavanaugh, Jr., PATTERSON, BELKNAP, WEBB & TYLER LLP, New York, New York, for Appellants. David Newmann, HOGAN LOVELLS US LLP, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** William F Cavanaugh, Jr., Craig A. Newman, PATTERSON, BELKNAP, WEBB & TYLER LLP, New York, New York, Marc L. Newman, THE MILLER LAW FIRM, Rochester, Michigan, for Appellants. David Newmann, Alexander B. Bowerman, HOGAN LOVELLS US LLP, Philadelphia, Pennsylvania, Catherine E. Stetson, Sean Marotta, HOGAN LOVELLS US LLP, Washington, D.C., Philip J. Kessler, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, for Appellee.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.  MAG IAS Holdings, Inc. (MAG Holdings) and MAG U.S. Holdings, LLC (MAG US, collectively plaintiffs) appeal the dismissal of their diversity action against Rainer Schmückle for lack of personal jurisdiction.  Because plaintiffs have made a *prima facie* showing that the district court can exercise personal jurisdiction over Schmückle, we reverse and remand the case for further proceedings consistent with this opinion.

I.

A.

During the relevant time period, the MAG Group was an affiliation of entities that together formed a multinational manufacturing-technology company providing production plants and machinery to make engine and chassis parts for the automotive industry.  One of these entities was MAG Holdings, a Delaware corporation.  MAG Holdings owned a controlling stake in MAG US, a Delaware limited-liability company.  MAG US, in turn, owned one-hundred percent of MAG Automotive LLC (MAG Automotive), a Delaware limited liability company with its principal place of business in Sterling Heights, Michigan.  Through a subsidiary, MAG Holdings also owned a majority stake in MAG IAS GmbH (MAG Germany), a German company.  MAG Automotive and MAG Germany have since been sold to the Fair Friend Group, a Taiwanese investment firm.

Moshe Meidar is MAG Holdings's majority shareholder.  He previously served as CEO of the MAG Group.  Even after stepping down as CEO, Meidar continued as president of MAG Holdings and chairman of MAG US.  In addition to Meidar, the MAG US leadership team included Brian Prina (president) and Robert Dudek (secretary and treasurer).  Prina and Dudek also held positions at MAG Automotive: Prina was president, and Dudek was vice-president of finance.  Both Prina and Dudek lived in Michigan and worked at MAG Automotive's Sterling Heights facility.

Rainer Schmückle is a German citizen living in Germany. From November 2014 until his termination in June 2015, Schmückle served as CEO of the MAG Group and managing director of MAG Germany pursuant to an employment contract.

B.

On August 19, 2015, MAG Holdings and MAG US sued Schmückle in Macomb County Circuit Court for breach of fiduciary duty, professional negligence, waste of corporate assets, unjust enrichment, and tortious interference under Michigan law. Plaintiffs allege that, as CEO of the MAG Group, Schmückle "implemented an elaborate scheme" to engineer a "fire sale" of MAG Group assets for his own personal financial benefit. DE 1-2, State Ct. Compl., Page ID 11–12. They claim that Schmückle's conduct injured them and their Michigan-based subsidiary, MAG Automotive.

Schmückle removed the case to the United States District Court for the Eastern District of Michigan. He then filed motions to dismiss for failure to state a claim, lack of personal jurisdiction, and *forum non conveniens*, along with a declaration disputing many of the jurisdictional facts alleged in the complaint. In response, plaintiffs filed affidavits from Dudek and Prina.

With respect to personal jurisdiction, plaintiffs claim that Schmückle "transacted business within the State of Michigan" and that his "actions and activities led to consequences within the State of Michigan." *Id.* at 14. In their complaint and supporting affidavits, plaintiffs make a number of allegations about Schmückle's tenure at the MAG Group as it relates to his Michigan contacts. Plaintiffs allege that when Schmückle was hired in November 2014, he was given a mandate by the MAG Group's board of directors to improve the company's financial situation by identifying and pursuing financing options. They allege that Schmückle's compensation package provided him an equity bonus upon the sale of MAG Group assets, but not for minority investments or other financing arrangements, and that this led Schmückle to act in his own self-interest instead of acting in the best interests of the company.

Plaintiffs assert that Schmückle was responsible for the "worldwide operations of the MAG Group"—including MAG US and MAG Germany—and that he held himself out as the

"Global CEO" of the company.  *Id.* at 16; DE 14, Dudek Aff., Page ID 247.  They allege that Prina and Dudek reported directly to Schmückle.  Prina claims that he had "ongoing and substantive" contact with Schmückle: that they communicated regularly by email and three to four times a week by phone.  DE 15, Prina Aff., Page ID 258.

Plaintiffs further allege a number of ways in which Schmückle was closely involved with, and exercised control over, day-to-day operations at MAG US in Michigan.  Specifically, they allege that (1) he was involved in determining facility operations, budgets, work flow, and sales priorities; (2) he charged MAG US a € 1.5 million annual administrative fee used to pay a portion of his salary and expenses; (3) he reallocated work from the "consistently profitable" Michigan facility to the "less-profitable" operations at MAG Germany and negatively affected the profitability of MAG US in Michigan; and (4) he told MAG US leaders to prepare to transfer $10 million to MAG Germany to cover an equity shortfall.

Schmückle allegedly visited Michigan twice during his eight-month tenure as CEO.  In December 2014, he spent three days in Michigan meeting with the management team, learning about the Sterling Heights facility, and reviewing historical and projected performance.  During that trip, Schmückle allegedly instructed Dudek and his German counterpart to "transfer a portion of the general administration and [R&D] expenses from the German operations to the Michigan operations."  DE 14, Dudek Aff., Page ID 247.  In February 2015, Schmückle allegedly returned to Michigan to meet with executives from the Ford Motor Company, MAG Automotive's largest client.

Plaintiffs also claim that on June 3, 2015, Schmückle met with Prina, Dudek, Meidar, and others in Frankfurt, Germany, to discuss proposals from outside investors.  At that meeting, Schmückle allegedly stated that unless the MAG Group assets were sold, he would force the MAG Group into insolvency, despite warnings from Prina and Dudek that such action would cause irreparable harm to MAG US and MAG Automotive in Michigan.  Schmückle's employment was allegedly terminated the next day.

Finally, beyond his involvement with the MAG Group, plaintiffs allege that Schmückle maintains a residence in Portland, Oregon, and that he sits on the boards of at least three companies based in the United States.

The district court, without holding an evidentiary hearing, granted Schmückle's motion to dismiss for lack of personal jurisdiction on the grounds that exercising personal jurisdiction over Schmückle would not comport with due process. The court did not decide whether the complaint failed to state a claim or whether the case should be dismissed on *forum non conveniens* grounds. Plaintiffs filed a timely notice of appeal.

C.

On September 1, 2015, shortly after the Michigan suit was filed, Schmückle filed a wrongful-termination claim against MAG Germany in the Ulm Regional Court in Germany.[1] There, Schmückle alleged that his termination violated the German Civil Code and that he was due additional salary and benefits payments. MAG Germany argued that terminating Schmückle without notice was proper given "his permanent refusal to act for the benefit of the company and to safeguard the asset interests of the company and its shareholders and business policies driven by [his] own financial interest[.]" DE 22-3, Ex. 2 to Newmann Decl., Page ID 371. MAG Germany clarified that it was not seeking damages from Schmückle, even though MAG Holdings and MAG US were pursuing such relief in Michigan courts. The Ulm Regional Court issued a judgment on July 15, 2016. The court found that Schmückle was not properly terminated, ordered MAG Germany to make a series of compensatory payments, and otherwise dismissed the suit. Based on the parties' representations at oral argument, we understand that an appeal in the German litigation is pending.

II.

In deciding a motion to dismiss for lack of personal jurisdiction, the district court may rely "upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may

---

[1]Schmückle asks us to take judicial notice of this proceeding. Because both parties have discussed it in briefing the jurisdictional question before us, we note the existence of German litigation for the limited purpose of our current jurisdictional analysis. *See Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 411–12 (6th Cir. 2006); *United States v. Garland*, 991 F.2d 328, 332–33 (6th Cir. 1993).

conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  Although plaintiffs have the burden of establishing that a district court can exercise jurisdiction over the defendant, that burden is "relatively slight" where, as here, the district court rules without conducting an evidentiary hearing.  *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quotation omitted).  To defeat dismissal in this context, plaintiffs need make only a *prima facie* showing that personal jurisdiction exists.  *Id.* (citing *Theunissen*, 935 F.2d at 1458).

We review a dismissal for lack of personal jurisdiction *de novo*.  *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005).  In reviewing the *prima facie* case, we consider pleadings and affidavits "in a light most favorable to the plaintiff[s]," and do not weigh "the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459.  When a *prima facie* showing is made, remand is appropriate, but the defendant can continue to contest personal jurisdiction by requesting an evidentiary hearing or moving for summary judgment should the evidence suggest "a material variance from the facts" as presented by plaintiffs. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 893 (6th Cir. 2002).

III.

In determining whether limited personal jurisdiction exists over a given defendant, we look to both the long-arm statute of the forum state and constitutional due-process requirements.[2] *Air Prods. & Controls, Inc.*, 503 F.3d at 550.  The Michigan long-arm statute, however, "extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Grienpentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).  The exercise of personal jurisdiction over Schmückle is consistent with due process if Schmückle purposefully availed himself of the privilege of acting or causing a consequence in Michigan, if the cause of action arose from his Michigan activities, and if his actions, or the consequences he caused, have a sufficiently substantial connection with Michigan

---

[2]Plaintiffs allege only limited personal jurisdiction.  They do not claim that Schmückle is subject to general personal jurisdiction in Michigan.

so as to make the exercise of jurisdiction reasonable. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). After considering plaintiffs' complaint and affidavits in a light most favorable to them, we conclude that they have made a *prima facie* showing that personal jurisdiction exists.

## A.

First, to determine purposeful availment, we ask whether Schmückle acted or caused a consequence in Michigan such that he invoked the benefits and protections of Michigan law. *S. Mach. Co.*, 401 F.2d at 381. This ensures that Schmückle could have reasonably "anticipate[d] being haled into court there," *see LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), and it ensures that he is not brought into a Michigan court "solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

The Supreme Court has said that purposeful availment exists if the defendant created a "substantial connection" with the forum state by engaging in "significant activities within [the] State," or by creating "continuing obligations" to residents in that state. *Id.* at 475–76 (internal citation and quotation marks omitted). We have extended this to business relationships "intended to be ongoing in nature." *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) (citing *S. Mach. Co.*, 401 F.2d at 385). The Supreme Court has also clarified that although "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," a relationship with the plaintiff or a third party, "standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014). Instead, the focus is on "the defendant's contacts with the forum State itself." *Id.* at 1122; *see Brewington*, 836 F.3d at 551. Additionally, although the Court has said that physical presence in the forum state is not required, *Burger King*, 471 U.S. at 476, physical entry by the defendant "is certainly a relevant contact." *Walden*, 134 S. Ct. at 1122.

1.

As an initial matter, we are not persuaded by Schmückle's argument that *Walden* precludes a finding of jurisdiction in this case. In *Walden*, the Court considered whether a federal court in Nevada had jurisdiction over a Georgia police officer who had filed a false affidavit against two Nevada residents knowing that it would affect them in Nevada. 134 S. Ct. at 1120. The Court found that the officer lacked minimum contacts because the officer's conduct occurred in Georgia and he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 1124–25. The officer's only connection to Nevada was by way of the plaintiffs he targeted there. *Id.* In holding that "mere injury to a forum resident is not a sufficient connection to the forum," *id.* at 1125, the Court distinguished its prior decision in *Calder v. Jones*, 465 U.S. 783 (1984), where it had found personal jurisdiction in California over an out-of-state defendant based on a libelous article published there, reasoning that the tort had involved the California community beyond just the plaintiff. *Walden*, 134 S. Ct. at 1125; *Calder*, 465 U.S. at 788–89.

We have had only one occasion to consider *Walden*'s impact. In doing so, we held that a Brazilian insurance company, which operated only in Brazil, lacked minimum contacts with Ohio where it was sued for breach of contract after refusing to indemnify a judgment against one of its clients. *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 F. App'x 406, 407 (6th Cir. 2015). We refused to find purposeful availment on the sole basis that the Brazilian insurer knew its refusal to indemnify would have effects in Ohio because doing so would have allowed the plaintiffs to create jurisdiction on the basis of *their* contacts, not the defendant's. *Id.* at 409.

Schmückle argues that because he targeted his conduct only at plaintiffs and not at Michigan itself, *Walden* forecloses a finding of purposeful availment. Plaintiffs argue that "causing consequences" in Michigan is still sufficient to establish purposeful availment because *Walden* limited, but did not clearly overrule, the Court's prior decision in *Calder*. Neither party is entirely correct. *Walden* simply holds that an out-of-state injury to a forum resident, standing alone, cannot constitute purposeful availment. *See Walden*, 134 S. Ct. at 1123–24. The implications of Schmückle's position are untenable and represent an overly broad reading of

*Walden*.  It would severely limit the availability of personal jurisdiction if every defendant could simply frame his conduct as targeting only the plaintiffs and not the forum state.  Schmückle seems to recognize as much by admitting that his relationship with MAG operations in Michigan "is a contact with Michigan."  CA6 R. 22, Appellee Br., at 17.

We need not define the exact scope of *Walden* and its effect on *Calder* in order to resolve this case.  It is enough to say that plaintiffs must do more than claim that Schmückle's actions affected them in Michigan and must show that Schmückle had some level of contact with the state, and that Schmückle cannot avoid jurisdiction by framing all of his activities as contacts with plaintiffs—who happen to be in Michigan—instead of contacts with Michigan itself.  Furthermore, Schmückle's trips to Michigan and the fact that he held himself out as the MAG Group's global CEO are sufficient to distinguish this case from *Walden*.

2.

Plaintiffs argue that Schmückle purposefully availed himself of the benefits of doing business in Michigan by: (1) being CEO of the MAG Group and holding himself out as having "global authority" over MAG operations, including those in Michigan; (2) directing and controlling MAG operations in Michigan; (3) traveling to Michigan on two occasions to meet with executives and customers; (4) initiating calls and emails to the state each week to direct MAG business; (5) transferring business from Michigan to Germany to prop up the German operations at the expense of those in Michigan; (6) engaging Michigan-based executives in strategic financing and sales negotiations; and (7) arranging for the Michigan operations to pay part of his salary by instituting a € 1.5 million transfer payment from MAG Automotive to MAG Germany.  These allegations, taken together, are sufficient for plaintiffs to meet their "relatively slight" burden at this stage of the proceedings.  *See Air Prods. & Controls, Inc.*, 503 F.3d at 549.

Schmückle argues that his short tenure at the MAG Group precludes a finding that he established an ongoing business relationship in Michigan.  This position ignores our prior holdings that the issue is not the quantity, but the quality of a defendant's contacts with the forum state.  *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000); *LAK*, 885 F.2d at 1301.  Although he was with the MAG Group for fewer than eight months, Schmückle had

established a close working relationship with MAG entities and employees in Michigan. During his two trips to Michigan, he was directly involved in planning for future operations in the state and met with executives from MAG Automotive's largest client, the Ford Motor Company. This interaction with Ford establishes that Schmückle's contacts with Michigan extended beyond the fact that the MAG Group had located its operations there. In addition to his trips, he was in regular contact with Michigan-based executives by phone and email.

It was also reasonable for Schmückle to have foreseen that his work with MAG Automotive would subject him to the jurisdiction of Michigan courts. Schmückle is alleged to have held himself out both to MAG employees and to clients as being responsible for MAG's Michigan operations. And it was during his visits to Michigan, and in his communications with Michigan-based employees, that he allegedly engaged in conduct—devaluing MAG's operations in Michigan by requiring that work and money to be transferred to operations in Germany—that injured plaintiffs. Finally, to the extent Schmückle did devalue MAG Group assets in Michigan for his own personal benefit, he would have known that his conduct both targeted the state and impacted the Michigan economy more broadly.

Schmückle is correct that the German venue and choice-of-law clauses in his employment agreement provide some evidence of his intent not to be subject to suit in Michigan, but, at this stage of the litigation, those provisions are not dispositive as to our minimum-contacts inquiry.[3] *See Intera Corp.*, 428 F.3d at 617; *Calphalon Corp.*, 228 F.3d at 723. Additionally, those clauses must be balanced against Schmückle's actions after signing the agreement that support the notion that he did intend to conduct business in Michigan. Because the evidentiary burden on plaintiffs is minimal at this stage, we find that the employment agreement, alone, is not enough to defeat plaintiffs' *prima facie* case.

Our holding that plaintiffs made a *prima facie* showing of purposeful availment is consistent with our prior decisions. In *Lanier v. American Board of Endodontics*, we found purposeful availment on the part of an out-of-state medical board that was seeking to expand its membership in Michigan. 843 F.2d 901, 911 (6th Cir. 1988). We found that the board's goal

---

[3]However, they may be dispositive as to whether, as a matter of contract, Schmückle is entitled to litigate in Germany. But we do not address that issue here.

was to have "ongoing, far-reaching consequences in the Michigan dental services market." *Id.* This is analogous to Schmückle who, as the MAG Group CEO, was assumedly responsible for growing the footprint of the Michigan-based operations. *See also CompuServe*, 89 F.3d at 1265 (finding intent to continue a business relationship in Ohio from the quality of defendant's "deliberate and repeated" contacts); *Schneider v. Hardesty*, 669 F.3d 693, 702–03 (6th Cir. 2012) (holding that two letters sent to Ohio were sufficient to establish personal jurisdiction in Ohio when false representations in the letters formed the basis for the action); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 450 (6th Cir. 2012) (finding sufficient contacts between a foreign defendant and the United States, in part, because the defendant's employees conducted business in the United States).

Schmückle points to *Calphalon*, 228 F.3d at 718, to argue that he lacked sufficient contact with Michigan because he targeted MAG Automotive "which just-so-happened to be in Michigan." CA6 R. 22, Appellee Br., at 16–17. *Calphalon* involved a dispute between an Ohio-based company, Calphalon, and its out-of-state distributor. 228 F.3d at 722. Calphalon argued that the distributor had purposefully availed itself of doing business in Ohio based on its association with Calphalon, even though the distributor's actual work did not take place in Ohio. *Id.* We refused to adopt that position, finding that the distributor's visits to Ohio had occurred simply because Calphalon was headquartered there, not because the distributor was seeking "to further its business and create 'continuous and substantial' consequences there." *Id.* at 723. Schmückle's relationship with Michigan, however, was more substantial than that of the *Calphalon* distributor's with Ohio. Schmückle's trips to Michigan and directives to Michigan-based executives are alleged to have been in an attempt to control, grow, and sell the business. Accordingly, we do not find *Calphalon* to preclude a finding of purposeful availment here.

B.

Next, we ask whether plaintiffs' claims "arise from" Schmückle's contacts with Michigan. *Air Prods. & Controls, Inc.*, 503 F.3d at 553. This requires that Schmückle's contacts be "related to the operative facts of the controversy." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (quoting *CompuServe, Inc.*, 89 F.3d at 1267). We have said this is a "lenient

standard," requiring only that the cause of action have a "substantial connection" to the defendant's activity in the state. *Id.*

Plaintiffs argue that their claims are connected to Schmückle's interactions with the MAG Group's Michigan-based operations. They point to their allegations that he transferred work from Michigan to Germany, diminished the profitability of the Michigan operations, charged MAG Automotive an administrative fee to subsidize the German operations, and otherwise "squandered" Michigan-based corporate assets to create opportunities for his own personal benefit.[4] Schmückle contends that this conduct is "at most a sideshow to the primary conduct that forms the basis" of the complaint. CA6 R. 22, Appellee Br., at 29–30. He argues that the primary thrust of plaintiffs' allegations is that he wasted MAG Group assets and prevented a minority investment in the company, activity unrelated to his Michigan contacts.

Although Schmückle's alleged refusal to accept a minority investment and his waste of MAG Group assets are undoubtedly grounds for plaintiffs' action against Schmückle, narrowing the case in this manner ignores plaintiffs' allegations that Schmückle, as CEO, took actions to prop up MAG Germany at the expense of the Michigan-based operations. These alleged actions by Schmückle were connected to his visits to Michigan and his directives to Prina and Dudek— Michigan-based executives. Because Schmückle's contacts with Michigan led to the alleged harm suffered by MAG US and MAG Holdings, we conclude that plaintiffs' claims "arise from" Schmückle's Michigan contacts under our "lenient standard."

C.

Finally, we ask whether the exercise of personal jurisdiction over Schmückle is reasonable. *S. Mach. Co.*, 401 F.2d at 381. This ensures that the exercise of personal jurisdiction is consistent with notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476–77. When the first two prongs of our personal jurisdiction test are met, there is an inference of reasonableness and "only the unusual case will not meet this third criteria."

---

[4]Plaintiffs also argue that Schmückle established an intercompany pricing scheme that raised costs in Michigan that had the corresponding effect of making the Michigan-based portion of the business less competitive and less profitable. Although plaintiffs introduced this claim in the Prina Affidavit, they never raised this issue before the district court. Accordingly, we find that such an argument is waived on appeal. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 614–15 (6th Cir. 2014).

*Air Prods. & Controls, Inc.*, 503 F.3d at 554 (quoting *Theunissen*, 935 F.2d at 1461). We look to the following factors in making a reasonableness determination: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiffs' interest in obtaining relief. *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 666 (6th Cir. 2005) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

There is not enough at this point in the litigation for Schmückle to overcome an inference of reasonableness. There will undoubtedly be some burden on Schmückle to defend a lawsuit in the United States. And we recognize that requiring him to do so might disturb his expectations under his employment agreement and create parallel proceedings to the German litigation against MAG Germany.[5] At the same time, Schmückle admits that he owns a vacation residence in Oregon and that he traveled to the United States three times in five months while working for MAG—the two business trips to Michigan, along with a personal trip in April 2015. This suggests that the burden of defending a lawsuit in Michigan may not be as great as it would be for other foreign defendants.

Additionally, Michigan has at least some interest in the litigation. Assuming, as we must, that plaintiffs' allegations are true, Schmückle caused injury to a business located in Michigan, which also impacted Michigan-based employees like Prina and Dudek. Although Schmückle is correct that neither MAG Holdings nor MAG US is organized under Michigan law, plaintiffs allege that MAG US's sole asset—MAG Automotive—was located there.

Finally, plaintiffs certainly have an interest in pursuing their claims. Schmückle appears to concede this point. It is unclear, however, whether there is a more appropriate forum for this case such that exercising jurisdiction would be unreasonable. At oral argument, Schmückle was unable to direct us to such a forum in the United States. Therefore, we are left asking whether plaintiffs should be proceeding in the German courts. We are not prepared to decide such a question on the existing record. First, the extent to which the German court could or did consider arguments similar to those presented by plaintiffs in this case is unclear. Second, we

---

[5]We note, however, that the extent of Schmückle's current obligations in the German litigation are unclear given the lack of a record—beyond the representations of counsel that an appeal is pending—as to the current state of the litigation now that the Ulm Regional Court has entered judgment.

believe that further factual development is necessary on the disputed question of where the majority of witnesses are located and whether discovery material is primarily in English or German. Thus, we are left with an unrebutted presumption that it is reasonable for a Michigan court to exercise personal jurisdiction over Schmückle.

Such a holding is consistent with our case law. First, in *Fortis Corporate Insurance v. Viken Ship Management*, 450 F.3d 214 (6th Cir. 2006), we applied a presumption of reasonableness after plaintiffs established purposeful availment and a cause of action arising out the forum-state contacts of two Norwegian defendants. *Id.* at 215, 223. We held that such a presumption was not overcome when the parties were able to conduct discovery across borders, most of the witnesses spoke English, and the forum state had a strong interest in the underlying litigation. *Id.* at 223. Second, although Schmückle relies on our decision in *Miller*, 694 F.3d at 675, where we found it would be unreasonable to require a Swiss insurance company to litigate in Michigan, that case is distinguishable. In *Miller*, we relied on the facts that the defendant had no presence in Michigan, that Swiss law might have applied, that all of the relevant events occurred in Switzerland, that all witnesses and evidence were in Switzerland, that trial materials would have to be translated from German to English, and that there was a possibility that the case would be transferred to Switzerland under the terms of a forum-selection clause. *Id.* at 681. Although, at first glance, this appears to align closely with the facts of this case, there are three crucial differences. First, the defendant in *Miller* had not purposefully availed itself of doing business in Michigan, eliminating any presumption of reasonableness. *Id.* at 680. Second, unlike the defendant in *Miller*, Schmückle visited Michigan twice. Third, unlike this case, it does not appear that there was any dispute in *Miller* as to where the relevant events occurred and where evidence and witnesses were located. *Id.* at 680–81.

Taking this all into account, we conclude that the current record does not overcome the presumption that exercising personal jurisdiction over Schmückle in Michigan is reasonable. *See Air Prods. & Controls, Inc.*, 503 F.3d at 554. Further development of the record, however, would certainly help to inform this analysis should Schmückle choose to further contest the issue of personal jurisdiction on remand.

IV.

Alternatively, Schmückle asks us to dismiss the complaint on the basis of *forum non conveniens*. This doctrine allows a court with otherwise valid jurisdiction to decline to exercise such jurisdiction because of case-specific issues of fairness and convenience. *See Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 364 (6th Cir. 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249–50 (1981)). The district court dismissed plaintiffs' complaint without reaching this question. We have previously refused to consider *forum non conveniens* questions yet to be addressed by a district court because fact-finding and balancing are more easily accomplished in that court. *See NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 818 n.4 (6th Cir. 2008); *Serras*, 875 F.2d at 1218. Accordingly, we decline to reach the issue here.[6]

V.

For the foregoing reasons, we reverse the district court and remand the case for further proceedings consistent with this opinion.

---

[6]We note, however, that the appropriate test for the district court to apply turns on whether plaintiffs are bound by the forum-selection clause in Schmückle's employment agreement. *Compare Estate of Thomson*, 545 F.3d at 364–65 (outlining the traditional *forum non conveniens* analysis), *with Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) (noting that the "calculus changes" when parties are bound by a valid forum-selection clause).