<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 18a0206n.06

Case No. 17-5271

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

**FILED**
Apr 19, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| EUGENE N. BULSO, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE MIDDLE DISTRICT OF |
| | ) | TENNESSEE |
| THOMAS O'SHEA, Individually and as | ) | |
| trustee of the Trust of Thomas and Anne | ) | |
| O'Shea; MICHAEL J.M. BROOK; DEANNA | ) | |
| L. WEIDNER; DAVID B. ANDERSON; | ) | |
| ANDERSON WEIDNER, LLC, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: GILMAN, COOK, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. Tennessee attorney Eugene Bulso represented Thomas O'Shea and others in connection with real estate disputes around the country. Their later falling-out over legal fees spurred litigation in California and Alabama. The eventual dismissal of one claim that O'Shea lodged against Bulso prompted Bulso to countersue in Tennessee for malicious prosecution. The district court dismissed Bulso's malicious-prosecution action for lack of personal jurisdiction, noting the absence of a meaningful connection between any of the defendants and Tennessee. For the reasons explained here, we AFFIRM.

**I.**

Bulso's malicious-prosecution claim stems from a lawsuit that O'Shea filed against Bulso in California alleging, among other claims, legal malpractice. Eventually, the California district

court transferred that action to Alabama at Bulso's request. The Alabama district court thereafter severed and dismissed a claim premised on a California statute meant to protect the elderly from victimization.[1] *See S. F. Residence Club, Inc. v. Leader, Bulso & Nolan, P.L.C.*, No. 2:13-CV-0951-SLB, 2015 WL 5682425, at *1 (N.D. Ala. Sept. 28, 2015) (summarizing the order to refile claims as separate actions); *O'Shea v. Leader, Bulso & Nolan P.L.C.*, No. 2:14-CV-1955-KOB (N.D. Ala. Dec. 16, 2015) (dismissing "elder abuse" claim). The dismissal of that California elder-abuse claim prompted Bulso to countersue in Tennessee with this malicious-prosecution action, asserting that O'Shea and his new lawyers filed the elder-abuse claim in bad faith. Determining that it lacked jurisdiction over these diverse defendants (O'Shea and Brook being citizens of California and the others of Alabama), the Tennessee district court dismissed the case. *Bulso v. O'Shea*, No. 3-16-0040, 2017 WL 563940, at *1, *3 (M.D. Tenn. Feb. 13, 2017). Bulso now appeals that dismissal.

**II.**

We review de novo the district court's dismissal for want of personal jurisdiction. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017). A plaintiff bears the burden of establishing that a court may properly exercise jurisdiction over a defendant. *Id.* And because the district court here granted a Rule 12(b)(2) motion without an evidentiary hearing or discovery, Bulso must only make a prima facie showing that jurisdiction exists. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). We consider the

---

[1] O'Shea was over 65 years old and alleged that Bulso overbilled him and misappropriated settlement funds.

pleadings and affidavits "in a light most favorable" to the plaintiff without weighing "the controverting assertions of the party seeking dismissal." *Schmuckle*, 854 F.3d at 899 (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).

## III.

Bulso claims that the district court erroneously decided that his complaint showed an insufficient basis for requiring these defendants to submit to jurisdiction in Tennessee. For a state to exercise jurisdiction, a defendant generally must have certain "minimum contacts" with the forum state. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Specific (sometimes called "case-linked") jurisdiction depends on the relationship between the forum and the underlying controversy. *Id.* at 1121 n.6. In determining whether specific personal jurisdiction exists over a defendant, we look to both the long-arm statute of the forum state and constitutional due-process requirements. *See id.* at 1121. Tennessee's long-arm statute extends to the limits of due process. *See* Tenn. Code Ann. § 20-2-214(a)(6); *Harmer v. Colom*, 650 F. App'x 267, 272 (6th Cir. 2016) (citing *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645 (Tenn. 2009)). As a result, we need determine only whether exercising personal jurisdiction over the defendants violates due process. *See Harmer*, 650 F. App'x at 272.

To satisfy due process, the plaintiff must show that (1) the defendants purposefully availed themselves of the privilege of acting in the forum state, (2) the cause of action arises from the defendants' activities in the forum state, and (3) the defendants' acts or consequences "have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant[s] reasonable." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th

3

Cir. 2012) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). As explained below, Bulso's allegations fail to meet any of these requirements.

**A.**

In determining purposeful availment, we ask whether the defendants acted or caused a consequence in Tennessee such that they invoked the benefits and protections of Tennessee law. *See Schmuckle*, 854 F.3d at 900. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 134 S. Ct. at 1123 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Bulso maintains that the defendants purposefully availed themselves of Tennessee law in several ways: (1) O'Shea engaged Bulso to serve as his attorney, knowing that Bulso worked in a Tennessee law firm; (2) the defendants each met with Bulso in Tennessee at least once; (3) the defendants communicated with him by phone and email about his representation of O'Shea; and (4) when the defendants filed the elder-abuse claim in California, they served the summons and complaint on Bulso in Tennessee.

Although Bulso claims these contacts ultimately harmed him in Tennessee, "mere injury to a forum resident is not a sufficient connection to the forum" to establish jurisdiction. *Id.* at 1125. As the district court explained, "[a]fter *Walden*, there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum." *Bulso*, 2017 WL 563940, at *2. What is more, Bulso concedes that the contacts he identifies all relate to litigation in other states. Indeed, O'Shea originally sued Bulso in a California court under California law for misconduct

related to litigation in Alabama, California, and Hawaii. Bulso fails to demonstrate how the defendants invoked Tennessee's benefits and protections through the litigation in California and Alabama.

Cases like *Calphalon Corp. v. Rowlette* confirm that O'Shea and his lawyers had, at most, "random, fortuitous, or attenuated" contacts with Tennessee. 228 F.3d 718, 722 (6th Cir. 2000) (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989)) (internal quotation marks omitted). The *Calphalon* court evaluated as jurisdictionally insufficient a Minnesota company's phone, fax, and in-person contacts with an Ohio manufacturer. *Id.* *Calphalon* concluded that the Minnesota company would have served as the manufacturer's representative for the Ohio company regardless of the manufacturer's base of operation. *Id.* at 723. So too with the parties' course of dealings alleged here. The defendants' contacts with Tennessee came from Bulso's law firm being located in Tennessee, not because the defendants sought to invoke the benefits and protections of Tennessee law. *See also Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 795–97 (6th Cir. 1996) (finding no purposeful availment of Ohio law even though the defendant sent an agent to Ohio, solicited business from an Ohio company, and realized profits from business in Ohio); *LAK*, 885 F.2d at 1300–01 (concluding that no personal jurisdiction existed in Michigan over an Indiana partnership that made calls to and sent documents to a Michigan corporation). As in *Calphalon*, these defendants' contacts "were precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." 228 F.3d at 723.

Bulso, nevertheless, insists that our decision in *Schmuckle* supports his "purposeful availment" argument. Actually, quite the contrary. In *Schmuckle*, two entities that formed part of a multinational company sued the parent company's former CEO. 854 F.3d at 897. We determined that the plaintiffs made a prima facie showing that the CEO purposefully availed himself of Michigan law despite being a German citizen living in Germany. *Id.* at 901–02. Importantly, the CEO directed and controlled the plaintiffs' operations in Michigan, traveled to Michigan to oversee those operations, initiated weekly calls and emails to direct the operations in Michigan, transferred business from Michigan to Germany to benefit himself at the expense of the Michigan operations, engaged in strategic financing and sales negotiations with executives based in Michigan, and arranged for the Michigan operations to pay part of his salary. *Id.* By contrast, Bulso alleges that O'Shea and the various new lawyers each met with him at least once in Tennessee concerning the litigation in other states. And although the defendants called and emailed Bulso in Tennessee, Bulso admits that those communications all related to the litigation in other states. The differences between this case and *Schmuckle* therefore underscore the *absence* of sufficient jurisdictional contacts here.

**B.**

Next, we ask if Bulso's claim "arises from" the defendants' contacts with Tennessee. *Air Prods. & Controls, Inc.*, 503 F.3d at 553–54. To "arise from" the defendants' contacts with the forum state, those contacts must be "related to the operative facts of the controversy." *Schmuckle*, 854 F.3d at 903 (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). Although this is a "lenient standard," the cause of action must have a "substantial

connection" to the defendants' activity in the state. *Id.* (quoting *Bird*, 289 F.3d at 875). Yet, even applying the standard leniently, we conclude that Bulso has failed to demonstrate a substantial connection to Tennessee.

The operative facts surrounding the elder-abuse claim all occurred outside Tennessee. Despite the more obvious connections to other states, Bulso attempts to tie the malicious-prosecution claim to Tennessee by alleging that the defendants "fraudulently" concealed the elder-abuse claim from him in Tennessee for approximately three months so that he would continue to cooperate with the ongoing litigation that O'Shea's new attorneys took over from him. But Bulso's focus on where the defendants allegedly concealed something from him bypasses the relevant inquiry. The personal-jurisdiction analysis of the malicious-prosecution claim hinges on whether the defendants' conduct connects *them* to Tennessee, not on where Bulso experienced those consequences. *See Walden*, 134 S. Ct. at 1125 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). Because the operative facts concerning the malicious-prosecution claim all took place outside Tennessee, Bulso fails to demonstrate that his claim arises from the defendants' contacts with the state.

## C.

Finally, we ask whether exercising personal jurisdiction over the defendants would be reasonable. *Schmuckle*, 854 F.3d at 903. In determining reasonableness, we examine three factors: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief. *Id.* at 904 (citing *City of Monroe Emps. Ret. Sys. v. Bridgestone*

*Corp.*, 399 F.3d 651, 666 (6th Cir. 2005)). On balance, these factors demonstrate that exercising personal jurisdiction over the defendants would be unreasonable.

Given that the defendants have local counsel in Nashville, Bulso suggests that litigating in Tennessee presents a reasonable option. Bulso, however, neglects to show how Tennessee has an interest in a malicious prosecution claim targeting actions in other states. As the district court put it, "nothing about Defendants' challenged conduct in bringing the allegedly malicious prosecution in Alabama has anything to do with Tennessee." *Bulso*, 2017 WL 563940, at *3. Similarly, Bulso avoids confronting why he should obtain relief in Tennessee rather than another state. He simply contends that he "has an interest in pursuing his claim." Balancing all three factors, we conclude that the malicious-prosecution claim lacks a sufficiently substantial connection with Tennessee to make the exercise of jurisdiction over the defendants reasonable. *See Harmer*, 650 F. App'x at 272 (affirming dismissal of malicious-prosecution claim where the defendants' actions "lack a substantial enough connection with Tennessee to make it reasonable for a Tennessee court to exercise personal jurisdiction").

**IV.**

We AFFIRM the district court's judgment.