NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0540n.06

No. 21-1533

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

H&H WHOLESALE SERVICES, INC.,

    Plaintiff-Appellant,

v.

KAMSTRA INTERNATIONAL, B.V., et al.,

    Defendants-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Nov 24, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

SILER, Circuit Judge. Plaintiff H&H Wholesale Services, Inc. ("H&H"), appeals the district court's order granting Defendant's, B&S International, B.V. ("B&S"), motion to dismiss for lack of personal jurisdiction. For the following reasons we **AFFIRM**.

**I.**

H&H is a medical-products distributor located and incorporated in Michigan. During a trade conference in 2013, H&H's representative met with a representative of Kamstra International, B.V. ("Kamstra"), a Dutch company, to negotiate a wholesale agreement for the purchase of medical supplies. In 2014, after the trade conference, H&H contracted with Kamstra to purchase "FreeStyle" brand glucose testing strips manufactured by Abbott Laboratories (the "Vendor Agreement"). Under the Vendor Agreement, Kamstra warranted the authenticity of the testing strips and included an indemnification provision in favor of H&H for any breach of the agreement.

H&H claims it was made to believe it was doing business with the so-called "Holland Trading Group," a century old, publicly traded distributor of pharmaceutical and beauty products. Publicly filed documents show Kamstra is, in fact, at the bottom of a foreign corporate hierarchy, operating under the brand name "Holland Trading Group." At the top of the "Holland Trading Group" hierarchy is B&S Group S.A., a private limited liability company established under the laws of Luxembourg. B&S Group S.A. controls three operating divisions through its holding company B&S. B&S is the majority shareholder of one of these operating divisions and through its subsidiaries owns a majority share of Kamstra and three sister companies: Kafa B.V. ("Kafa"), Class International B.V. ("Class International"), and Class Hair Care B.V. ("Class Hair Care"). B&S is therefore the corporate great-grandfather of each company. Under this hierarchy, each company operates as part of the "Holland Trading Group" brand name: Kafa in pharmaceuticals, Class Hair Care in professional hair care, Kamstra in medical aids, and Class International in toiletries.

Throughout November 2016 and April 2017, H&H received 24,000 boxes of the "FreeStyle" testing strips from Kamstra. Unbeknownst to H&H, many of the strips were housed in counterfeit packaging and included counterfeit instructional inserts. H&H only learned of this in May 2017, when Abbott Laboratories executed a raid of its facility pursuant to an ex parte injunction. *See generally Abbott Laboratories v. H&H Wholesale Servs. Inc.,* No. 1:17-cv-03095-CBA-LB (E.D.N.Y.). After Abbott Laboratories had discovered H&H was selling testing strips in counterfeit packaging, it sought and received an injunction in New York federal court. The injunction allowed Abbott Laboratories to raid H&H's facility and seize hundreds-of-thousands-of-dollars' worth of products, and enjoined H&H from selling any diabetic testing strips—its best-selling product.

After the raid, H&H demanded Kamstra indemnify it for its mounting legal fees and the potential millions in damages sought by Abbott Laboratories. Kamstra declined. H&H sued Kamstra in the United States District Court for the Eastern District of Michigan, pursuant to a forum-selection clause, for breach of contract and breach of the U.C.C. warranty of title and against infringement. Roughly two years later, H&H deposed Jeoren Erents, Kamstra's area sales manager who had serviced the Vendor Agreement. During the deposition, H&H learned for the first time that within weeks of being notified of the raid, Kamstra ceased its operations at the direction of B&S and transferred its entire business to Kafa, Kamstra's sister company and one of B&S's great-grandchildren.

Believing that B&S orchestrated Kamstra's shutdown to avoid indemnification liability, H&H amended its complaint in 2020 for the third time, to allege that Kamstra was B&S's alter ego and that Kafa and Class Hair Care were liable to H&H under the law of successor liability. B&S, Kafa, and Class Hair Care moved to dismiss H&H's third amended complaint for lack of personal jurisdiction under Rule 12(b)(2) and under Rule 12(b)(6) for failure to state a claim. The district court had already found the forum-selection clause extended personal jurisdiction over Kamstra, but H&H agreed the three other defendants were only subject to jurisdiction in Michigan under the alter-ego or successor-liability theory of personal jurisdiction, not by their own conduct.

The district court granted the motion to dismiss for lack of personal jurisdiction as to B&S and Class Hair Care but found that Kafa was a "mere continuation" of Kamstra, and thus subject to personal jurisdiction. The district court went on to deny Kafa's motion under Rule 12(b)(6) as well. H&H moved for reconsideration only as it related to B&S and alternatively requested the district court certify its dismissal of B&S pursuant to Fed. R. Civ. P. 54(b). The district court denied H&H's motion for reconsideration but certified its dismissal for interlocutory review.

## STANDARD OF REVIEW

We review the district court's dismissal for lack of personal jurisdiction de novo. *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017). A district court has discretion in how it resolves a 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Serras v. First Tenn. Bank Nat'l. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). "If it decides that the motion can be ruled on before trial, the court 'may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). The district court here chose to rule on the parties' written submissions.

"Although plaintiffs have the burden of establishing that a district court can exercise jurisdiction over the defendant, that burden is 'relatively slight' where, as here, the district court rules without conducting an evidentiary hearing." *MAG IAS Holdings, Inc.*, 854 F.3d at 899 (citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). "To defeat dismissal in this context, plaintiffs need make only a prima facie showing that personal jurisdiction exists." *Id.* (citation omitted). We consider pleadings and affidavits "in a light most favorable to the plaintiff," without weighing "the controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

## DISCUSSION

In ruling on B&S's motion to dismiss, the district court considered only the third amended complaint and the parties' affidavits and exhibits. It held that H&H failed to make a prima facie showing that B&S was Kamstra's alter ego under Michigan law, primarily based on an affidavit submitted by B&S's Chief Financial Officer ("CFO"). H&H maintains the district court impermissibly considered the evidence attached to B&S's motion, and that had the district court

considered only H&H's third amended complaint and the exhibits attached to H&H's response, the court would have found that H&H made a prima facie showing that Kamstra was B&S's alter ego under Michigan law and thus B&S was subject to personal jurisdiction.

In this diversity action, Michigan law applies. *See Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008). And Michigan law recognizes the alter-ego theory of personal jurisdiction. *See Avery v. Am. Honda Motor Car. Co.*, 327 N.W.2d 447, 448 (Mich. 1982) ("[I]n order to find a parent corporation amenable to jurisdiction through the activities of its subsidiary, the subsidiary must be the corporation's 'alter-ego.'"). Under the alter-ego theory, a federal court may "exercise personal jurisdiction over . . . a corporation that would not ordinarily be subject to personal jurisdiction in that court when the . . . corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Thomson*, 545 F.3d at 362 (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)).

A subsidiary is its parent's alter ego only if the subsidiary has "become a mere instrumentality of the parent." *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (Mich. 1995) (quotation omitted). Michigan courts consider several factors, but none is dispositive, and the list is not exhaustive. They include:

> [I]f the parent and subsidiary share principal offices, if they share board members or executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously under-capitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own.

*United Ins. Grp. Agency, Inc. v. Patterson*, Case No. 299631, 2011 WL 5067251, at *2 (Mich Ct. App. Oct. 25, 2011) (citations omitted). Under Michigan law, "[t]he propriety of piercing the

corporate veil is highly dependent on the equities of the situation, and the inquiry tends to be intensively fact-driven." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (citations omitted).

Attempting to meet its burden below, H&H relied heavily on its complaint. H&H primarily argued that "it certainly can plausibly be inferred from the allegations in the [complaint] that B&S International closed down Kamstra to avoid its liability for its breaches of the Vendor Agreement." H&H cited allegations that B&S employs the individual who decided to shut down Kamstra; B&S has control over termination of or changes with Kamstra employees; the B&S board "maintains strategic controls over its subsidiaries" and controls risk management; the B&S audit and risk committee oversees its subsidiaries; and B&S "dominated and controlled" activities, financial operations, and management of its subsidiaries. H&H also alleged that Kamstra, Kafa, Class Hair Care, and Class International shared principal offices and support services; Kamstra employees reported in a chain of command that ended with B&S; and the four companies filed consolidated tax returns. These allegations satisfy the shared-offices and gratuitous-services factors under Michigan law, and also support the argument that B&S directed the polices and decisions of H&H.

But through its affidavit and accompanying exhibits, B&S showed that the remaining factors under Michigan law were unsatisfied, and H&H either failed to controvert these facts or merely responded with allegations in its complaint. For instance: B&S's affidavit said that Kamstra bought its own supplies, kept separate financial records, paid its share of taxes, had separate inventory and assets, was not wholly capitalized by B&S, generated its own revenue, and managed its own payroll. Likewise, B&S attached the stock-purchase agreement between Kamstra and Kafa, which showed that Kamstra sold its assets to Kafa for "book value" and that Kafa agreed to return any profits to Kamstra. Public corporate records at the time also showed that Kamstra

had substantial assets during 2017 and into 2019, indicating that Kamstra was not left "underfunded" and that B&S did not liquidate Kamstra for "little or no consideration" as H&H alleged.

H&H faults the district court for looking beyond its allegations and considering B&S's affidavit. It is certainly true that a district court cannot "consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). But "[i]f the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, 'by affidavit or otherwise [,] . . . specific facts showing that the court has jurisdiction.'" *Serras*, 875 F.2d at 1214 (citation omitted) (alterations in original). The district court accurately noted that H&H's allegations could not overcome the specific facts presented by B&S, even when reviewing the evidence in a light most favorable to H&H. The court, therefore, did not improperly credit B&S's evidence. And considering this evidence, the court correctly found that H&H failed to make a prima facia showing that B&S was Kamstra's alter ego under Michigan law.

H&H also argues the court is precluded from considering a defendant's evidence when jurisdictional facts and the merits of a claim are "intertwined," as H&H says they are here.[1] In

---

[1] B&S maintains that H&H forfeited this argument by failing to raise it before reconsideration. "Arguments raised for the first time in a motion for reconsideration are untimely and forfeited on appeal." *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 692 (6th Cir. 2012) (citation omitted). On initial consideration, the district court and B&S certainly considered how to apply the prima facie standard, but neither was given the chance to consider an exception to this standard. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (cleaned up) (recognizing that the forfeiture rule is meant to "ease[] appellate review by having the district court first consider the issue" and to "ensure[] fairness to litigants by preventing surprises from appearing on appeal."). In fact, H&H argued in its response to B&S's motion that "B&S defendants have asserted a factual challenge to the [complaint] through its supporting affidavit, thus, opening the door for H&H to support its pleadings with affidavit or other evidence." H&H therefore fails to indicate where it originally warned that the court must ignore evidence tendered by B&S—at most it only argued

support of its argument, H&H relies on *Serras*, in which we noted that "where the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, a trial court should not require plaintiffs to mount proof which would in effect, establish the validity of their claims and their right to the relief sought," but rather when a court rules on written submissions it is "obligated to look solely to the plaintiff's pleadings and affidavits . . . ." 875 F.2d at 1215 (cleaned up). But in *Serras*, we merely advised against requiring plaintiffs to "mount" this quantum of proof at the prima facie stage because a plaintiff's burden increases at an evidentiary hearing to a preponderance of the evidence, and because a defendant may proceed to trial without waiving a personal-jurisdiction defense, despite an order denying its Rule 12(b)(2) motion. *Id.* at 1214. We noted, therefore, that "[i]n many cases . . . a district court may find sound reasons to rule . . . that the plaintiff has made her prima facie showing[,]" then forgo an evidentiary hearing, and "reserve all factual determinations on the issue for *trial*." *Id.* at 1215 (emphasis added); *see also Palnik v. Westlake Ent., Inc.*, 344 F. App'x 249, 253 (6th Cir. 2009) ("The existence of 'intimately intertwined' facts do not relieve the plaintiff of the burden to make a prima facie case for jurisdiction, it only prevents trying the case prior to trial."). Under the prima facie standard, "it [still] remains the plaintiff's burden," *Palnik*, 344 F. App'x at 251, and "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458.

In the same vein, H&H complains the district court ruled on B&S's motion without "the benefit of discovery into B&S'[s] or its subsidiaries' finances and operations." But this is what

---

the court could consider H&H's evidence as well. As discussed below, the argument is unpersuasive, nonetheless.

H&H asked for. H&H never sought jurisdictional discovery or an evidentiary hearing. *See, e.g.*, *Thomson*, 545 F.3d at 363 ("Plaintiffs also request a remand for additional discovery to support their argument of jurisdiction over TMC. Plaintiffs, however, did not request additional discovery in the district court. They cannot do so now."). Instead, H&H argued in its response to B&S's motion that the "evidence, including vast amounts of material already produced in discovery in this case, will show that liability against Kamstra and the B&S Defendants . . . is beyond question."

H&H also maintains the district court erroneously held that under Michigan law facts "demonstrating possible macro-management"—like a corporate great-grandparent closing down a subsidiary—do not alone demonstrate an alter-ego relationship, but that "operational control" over the subsidiary is necessary. H&H argues a corporate great-grandparent using its subsidiary to avoid liability shows an alter-ego relationship as a matter of law, regardless of whether the great-grandparent exercised "operational control" over the subsidiary. H&H forfeited this new argument by failing to raise it before reconsideration. *Scottsdale Ins. Co.*, 513 F.3d at 553. In its response to the motion to dismiss, H&H never claimed its accusation that B&S shut down Kamstra to avoid liability was sufficient as matter of Michigan law. Instead, H&H argued that numerous factors showed that B&S did, in fact, "dominate[] and control[]" Kamstra, and that B&S's intent to avoid Kamstra's liability only showed that Kamstra was used to injure H&H. *See, e.g.*, *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009) ("Rice has neither attempted to explain the discrepancy in his arguments, *nor even acknowledged that he is now presenting an entirely different argument*." (emphasis added)).

Similarly, H&H contends the court failed to consider allegations included within an affidavit that B&S's CFO swore in his capacity as a director for B&S Investments, B.V. H&H argues the affidavit shows that B&S was intimately involved in Kamstra's daily operations.

This affidavit is different from the one B&S submitted with its motion to dismiss. It was submitted by B&S Holland Trading Group B.V. and Kamstra in their respective motions to dismiss H&H's first amended complaint—two years before B&S submitted its motion to dismiss H&H's third amended complaint. In its response below, H&H made a *single* passing reference to the affidavit in a bulleted list of seven allegations that allegedly showed B&S "dominated and controlled" Kamstra. "[V]ague references to an issue fail to clearly present it to the district court so as to preserve the issue for appeal." *Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir. 1996). Surely H&H cannot fault the district court for failing to consider the affidavit. In fact, H&H never attached the affidavit to its response and so, as the district court on reconsideration correctly explained, this passing reference at most "suggest[ed] that it was *the filing of an affidavit by B&S's CFO,*" *H&H Wholesale Servs.*, 2021 WL 1747849, at *10 (emphasis added), that supported an alter-ego finding, not the content of the affidavit, as H&H now argues.

AFFIRMED.